SLIPPERY ROCK UNIVERSITY OF PENNSYLVANIA OF the STATE SYSTEM OF HIGHER EDUCATION, Petitioner

v.

ASSOCIATION OF PENNSYLVANIA STATE COLLEGE AND UNIVERSITY FACULTIES, Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 14, 2006.

Decided Jan. 16, 2007.

Reargument Denied March 9, 2007.

Andrew C. Lehman, Harrisburg, for petitioner.

James L. Cowden, Harrisburg, for respondent.

BEFORE: FRIEDMAN, Judge, and KELLEY, Senior Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Petitioner Slippery Rock University of Pennsylvania, Pennsylvania State System of Higher Education, petitions for review of an opinion and award of an arbitrator, dated July 8, 2006, which entered an award in favor of Respondent Association of Pennsylvania State College and University Faculties (APSCUF).

The labor arbitration that gave rise to this case arose when Slippery Rock University (the University), a component of the State System of Higher Education (SSHE), collectively referred to as Employer, denied tenure to Dr. Beverly Gocal (Grievant), a probationary faculty member in its Computer Science Department, in May, 2004. In denying tenure, Employer took the position that Grievant failed to demonstrate the requisite scholarly growth. As a result of her being denied tenure, Grievant's employment ended at the conclusion of the Spring 2005 semester.

As a faculty member, Grievant was a member of APSCUF. APSCUF is the sole and exclusive bargaining agent for faculty within SSHE, and a collective bargaining agreement (the CBA), covering the period of July 1, 2003, through June 30, 2007, exists between the those parties. (R.R. at 434a–565a). The CBA allows limited grievance rights to a faculty member who has been denied tenure. Grievant qualified to have her tenure denial reviewed by an outside arbitrator because two (2) of the three (3) recommendations favored the granting of tenure. (CBA Article 15.E.4, R.R. at 467a).

Under the CBA, the decision to grant tenure is to be based on a faculty member's performance in three areas: (1) teaching effectiveness, (2) scholarly growth, and (3) service to the university and community. (*See* CBA Article 15.B, cross-referencing Article 12, R.R. at 456a–462a).

Article 15 of the CBA, relating to tenure, delineates the procedure for granting

tenure, and provides as follows, in pertinent part:

E. The procedure for granting tenure shall be:

1. A department committee ... shall recommend to the University-wide tenure committee ... the names of those eligible fifth-year probationary non-tenured FACULTY MEMBERS of the department who have applied for tenure and whom they consider to be qualified for tenure; provided, however, that the department chairperson shall make an independent recommendation to the University-wide tenure committee regarding those ... who have applied for tenure....

* * *

3. The University-wide tenure committee, which shall consist of tenured FACULTY MEMBERS, shall review all tenure applications and recommendations received pursuant to this Article and shall ... submit its recommendations (positive and negative), together with the data upon which those recommendations are based, to the President or his/her designee....

4. The President shall grant tenure ... to those FACULTY MEMBERS whom he/she approves and such decision shall not be subject to the provisions of Article 5, GRIEVANCE PROCEDURE AND ARBITRATION. However, if at least two (2) of the three (3) recommendations (department committee, University-wide committee, department chairperson) are positive with respect to the granting of tenure and the President

denies tenure, the FACULTY MEMBER shall have the right to grieve the denial of tenure in accordance with the terms of Article 5, GRIEVANCE PROCEDURE AND ARBITRATION.

5. The President shall notify in writing each eligible FACULTY MEMBER, who applied for tenure ... of the decision made with respect to the granting of tenure....

(R.R. at 466a–467a).

The University also has a policy with the local APSCUF chapter at the University, entitled "Tenure and Probationary Faculty Evaluation Policies and Procedures" (the Local Agreement), which has been in effect at the University since September 1, 1988. (R.R. at 577a–591a). The Local Agreement provides that if there is a conflict between the Local Agreement and the CBA, the CBA will apply. (R.R. at 577a). The Local Agreement states that the "tenure candidate must assume the burden of providing substantial evidence that the departmental performance review categories have been met." (R.R. at 583a). It further states that it is the University President's "ultimate responsibility for the tenure decision-making process," and that the President must ensure "that all judgments are sustained by sufficient and appropriate evidence." Id. Additionally, the President or his designee are not to "employ criteria other than those used by the departmental and university-wide tenure committees."[1] Id.

In the case at hand, Grievant became employed at the University as an Assistant

---

1. Consistent with the CBA, the Local Agreement identifies the performance review categories as effective teaching, continuing scholarly growth and service to the University and/or community. (R.R. at 588a–590a, 456a–465a). The local agreement also states that "effective teaching and fulfillment of professional responsibilities is the most impor-

tant, but not the sole category for evaluating both teaching and non-teaching faculty." (R.R. at 588a). The Local Agreement lists twenty-three areas that can be considered continuing scholarly growth. Both the CBA and the local agreement list the types of activities that are to be counted as scholarly growth. (R.R. at 589a–590a).

Professor of Computer Science in 1999. Pursuant to the terms of the CBA, as a probationary faculty member, Grievant's performance was evaluated annually by the Department Chairperson, a Department evaluation committee (the Departmental Committee), and the Dean of the respective college. (R.R. at 457a, 465a). These annual evaluations of Grievant's performance were conducted by the Departmental Committee, the Department Chairperson and the Dean of the College as required by the CBA, and the evaluations were provided to Grievant contemporaneously with their completion. (R.R. at 381a). The annual evaluations reveal that Grievant's efforts to engage in scholarly growth were considered adequate by some University evaluators but lacking by others.

When Grievant became eligible for the tenure application process, she submitted an application for tenure which included, in part, an enumerated list of scholarly growth activities completed over the five (5) years she was a probationary faculty member at the University. The list consisted of seven (7) entries, which were as follows: (1) attendance at the PACISE [2] conference at Indiana University of Pennsylvania in April of 2000; (2) attendance at a grant writing workshop of the University; (3) attendance at the PACISE conference at Edinboro University of Pennsylvania and her presentation of a paper entitled "Creating an Information Technology Major—Everybody Wins" in 2001; (4) Conference Coordinator for the Spring, 2002, PACISE conference at the University; (5) attendance at the Spring 2002 PACISE conference at Shippensburg University where she was a co-presenter on "outcomes Assessment for Accredita-

tion"; (6) serving as a judge for an international science and engineering fair for high school students; and (7) attendance at a workshop on Modern Software Development.

The Chairperson of the Computer Science Department, Dr. Joshi (the Department Chairperson), recommended Grievant for tenure. As to the area of scholarly growth, the Department Chairperson wrote: "from her previous job in industry, she has several patents to her credit. Academic Research/Scholarship is a little different." (R.R. at 572a). The Departmental Committee also recommended Grievant for tenure. In support of that recommendation, it wrote as follows regarding Grievant's scholarly growth:

> [Grievant] has presented two papers at the ... PACISE ... conferences, one of which (with Dr. Whitfield), was published in the conference proceedings. She also attended a week-long Microsoft.NET programming and Internet application workshop.

(R.R. at 570a).

The University-wide Tenure and Sabbatical Committee (the UTSC), reviewed the recommendations of the Chairperson and the Departmental Committee, as well as the annual evaluations done during each of the candidate's first four (4) years of employment at the University. Despite the recommendations for tenure by the Department Chairperson and the Departmental Committee, the UTSC voted eight (8) to one (1) in March, 2004, to recommend that Grievant be denied tenure based upon inadequate scholarly growth. Dr. Swarts, acting as Chairperson of the UTSC, expressed the following in a memorandum to Dr. William Williams, the Pro-

---

**2.** "PACISE" is the acronym for "Pennsylvania Association of Computer and Information Science Educators," which is an association for computer and information science educators within the fourteen (14) SSHE schools.

vost of the University, and Dr. Robert Smith, the President of the University (referred to as "the Provost" and "the President," respectively):

> The [UTSC] believes that [Grievant's] department chair and department committee should have been more diligent in evaluating her lack of responsiveness to the areas of improvement that had been suggested to her. The best opportunity for careful evaluation and consideration should be at the department level. But when the evaluative comments and suggestions seem to be given to an applicant without appropriate follow-up and further action, then the recommendations provided to the University committee and ultimately the administration of the University are seemingly flawed and raise considerable doubt and concern about the merit, strength, and credibility of the application [for tenure].

(R.R. at 44a, 600a).

The Provost, acting as the President's designee to review tenure applications, reviewed Grievant's tenure application and the recommendations he received. As a result of the conflicting recommendations, the Provost contacted the Dean of the College and another professor in the Computer Science Department in order to get more information regarding Grievant. The Provost also met with Grievant, and Grievant was permitted to provide additional information regarding her scholarly endeavors. Ultimately, the Provost recommended to the President that Grievant be denied tenure. The President then denied tenure to Grievant.

As a result of the President denying tenure to Grievant, APSCUF filed a grievance on her behalf pursuant to the CBA. The grievance was denied at all levels, and an arbitration hearing was held on February 1, 2006, and February 23, 2006.

By opinion and award dated July 8, 2006, the Arbitrator determined that the President violated the terms of the CBA. The Arbitrator ordered that Grievant "be reinstated to her status quo ante as a probationary faculty member, and that she be deemed eligible for reconsideration for tenure." Employer filed the subject petition for review with this Court, challenging the award of the Arbitrator.

On appeal,[3] Employer asserts that the Arbitrator's award failed to draw its essence from the CBA. Specifically, Employer argues that the Arbitrator applied the incorrect burden of proof and that the Arbitrator used his own criteria to evaluate Grievant's tenure application and not the criteria that was bargained for and agreed to by the parties.

As to the clear standard of deference to be given by appellate courts to arbitrators' awards where the parties have bargained for arbitration to resolve grievances, our Supreme Court set forth the "essence test," explaining as follows:

> we believe that the role for a court reviewing a challenge to a labor arbitration award under Act 195 is one of deference. We hold that in light of the many benefits of arbitration, there is a strong presumption that the Legislature and the parties intended for an arbitrator to be the judge of disputes under a collective bargaining agreement. That

---

3. The standard of review to be applied to the case at hand is one of deference to the arbitrator's award. *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA)*, 560 Pa. 135, 743 A.2d 405 (1999). It is well-settled that our scope of review of a grievance arbitration award is the essence test. *State System of Higher Education v. Association of Pa. State College University Faculties*, 834 A.2d 1235, 1240 (Pa.Cmwlth.2003).

being the case, courts must accord great deference to the award of the arbitrator chosen by the parties. A fortiori, in the vast majority of cases, the decision of the arbitrator shall be final and binding upon the parties. However, there exists an exception to this finality doctrine. *The arbitrator's award must draw its essence from the collective bargaining agreement. Pursuant to the essence test as stated today, a reviewing court will conduct a two-prong analysis. First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement.* That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow, from the collective bargaining agreement.

*Cheyney University*, 560 Pa. at 149–50, 743 A.2d at 413 (emphasis added).

Employer implicitly concedes that the first prong of the "essence test" is met in that the issue before the Arbitrator is encompassed by the CBA. However, the second prong requires the Court to determine if the award is rationally derived from the CBA.

Employer argues that the Arbitrator violated the essence test when he applied the incorrect burden of proof. Employer contends that the Arbitrator misapplied precedent[4] and that the language of the CBA cannot rationally be interpreted to allow for the burden of proof applied by the Arbitrator in this case. The parties agree that the CBA does not expressly state which party bears the burden of proof in a grievance proceeding involving tenure.

In order to address this issue, we must first examine the approach taken by the Arbitrator in this case. The Arbitrator reviewed several arbitration cases in order to determine the appropriate analysis to apply in the absence of a specified standard and/or burden of proof in the CBA. The Arbitrator relied upon an opinion and award by Arbitrator Scott Buchheit (the Buchheit Award), issued in November 1998, relating to the denial of tenure of a faculty member at Bloomsburg University, also a component of SSHE. The Arbitrator concluded that the Buchheit Award was instructive as it rejected APSCUF's argument in the earlier case that the University bears the burden to establish that "just cause" existed to deny tenure. He also concluded that the Buchheit Award did not introduce an "arbitrary and capricious" standard to apply to future disputes.

The Arbitrator also relied upon an opinion and award by Arbitrator Seymour

---

**4.** This Court has previously held that while an arbitrator's decision generally lacks precedential value, the prevailing view provides that "when the prior decision involves the interpretation of the identical contract provision(s) between the same parties, stability in collective bargaining relations requires acceptance by an arbitrator of the previous interpretation." *School District of Philadelphia v. Philadelphia Federation of Teachers*, 168 Pa. Cmwlth. 671, 651 A.2d 1152, 1156 (1994), *petition for allowance of appeal denied, sub* *nom., Philadelphia Federation of Teachers, Local 3, American Federation of Teachers, AFL–CIO v. School District of Philadelphia*, 542 Pa. 681, 668 A.2d 1141 (1995). "There is general agreement that the refusal to apply an arbitrator's decision to a subsequent case of the same nature is justified, however, when previous decision was clearly erroneous or when changed conditions call into question the continued application of the decision." *School District of Philadelphia*, 651 A.2d at 1156.

Strongin (the Strongin Award), issued in March, 1997, involving the denial of tenure to a faculty member at West Chester University, another component of SSHE. The Arbitrator in the case now before us stated that Arbitrator Strongin "likewise found no clear resolution to the issue of which party bears the burden of proof in such matters or what constitutes the proper standard of review." (Opinion and award at p. 22, attached to Employer's brief as Exhibit A). The Arbitrator, accepting the analysis applied by Arbitrator Strongin, concluded that an arbitrary and capricious standard did not apply. He then wrote:

> On the matter of the burden of proof, Arbitrator Strongin accepted a framework put forth by the SSHE in that case (and for purposes of that case alone) that 'it bears the burden in the first instance of establishing the sound, reasonable basis for the President's decision denying grievant tenure, and that, if it can, it then falls to APSCUF to demonstrate, if it can, why that decision should be disturbed.'

(Opinion and award at p. 22, attached to Employer's brief as Exhibit A).

Employer takes the position that a review of the Buchheit Award reveals that the standard applicable to a denial of tenure case is whether the arbitrator finds that the University acted in a manner that was arbitrary and capricious. Moreover, while the Arbitrator in the case sub judice agreed that a just cause standard did not apply, Employer argues that the framework established in the Strongin award is essentially a just cause standard because it required the University to first establish a sound, reasonable basis for the decision denying tenure and then required Grievant to establish why that decision should be disturbed. (Opinion and award at p. 22, attached to Employer's brief as Exhibit A).[5],[6]

APSCUF disagrees with Employer's assertion that the Arbitrator applied a just cause standard of review. Rather, as to the burden of proof, APSCUF states that the Arbitrator merely accepted the frame-

---

**5.** Employer further takes the position that the language of the CBA cannot be rationally interpreted to allow for a just cause standard in denial of tenure cases. Employer notes that a fourth-year probationary non-tenured faculty member bears the burden of proof in grievances and arbitrations filed under Article 14, Section A6, A7 and A8. Specifically, Article 14A.9 states that a faculty member bears the burden of showing why he/she should be renewed. Employer asserts that to deny tenure is a final decision to not renew the faculty member. A faculty member who applies for tenure is still, by definition, a probationary faculty member. It only follows that a probationary non-tenured faculty member in his/her fifth year of probationary employment, who applies for tenure (Article 14A.2), should also bear the burden of showing why he/she was should have been granted tenure. Employer contends that there is no indication within the CBA that any challenge to the President's decision to deny tenure to a faculty member is anything other than one in which the faculty member should bear the burden. Therefore, placing the burden on Employer to establish a "sound reasonable basis for the President's decision" is not rationally derived from the CBA.

**6.** In further support of this position, Employer notes that although Article 15E.4 of the CBA, which allows for arbitration in the instant case, is silent as to the burden of proof to be applied, a reading of other sections of Article 15 are instructive. Article 15F.1 states that "[a] tenured faculty member may be terminated, suspended with pay ... or otherwise disciplined for just cause." The definitions section of Article 15 also states that "[t]enure shall mean the right of a FACULTY MEMBER to hold his/her position and not to be removed therefrom except for just cause...." (R.R. at 465a). Employer posits that these provisions establish that the parties knew how to insert a "just cause" standard had they intended to do so for denials of tenure, and that the CBA is clear that such a standard applies only to those faculty who are already tenured.

work established in the Strongin Award. APSCUF further contends that the Arbitrator applied the framework and concluded, after reviewing Grievant's work history and scholarly growth, that there was no basis for the UTSC's finding that Grievant lacked "responsiveness to areas of improvement that had been suggested to her." In addition, the Arbitrator concluded that the President's description of Grievant's scholarly growth as "virtually nonexistent" was contrary to the record and that the President had improperly regarded certain activities as "service" rather than "scholarly growth" in violation of a written University policy listing those activities as "scholarly." Based upon those findings, he concluded that Employer failed to meet its burden of establishing a sound, reasonable basis for denying tenure to Grievant. Because Employer failed to carry the burden, the Arbitrator held that no further inquiry was required. APSCUF states that this does not mean that the Arbitrator applied a just cause standard. Rather, it simply means that Employer failed to satisfy the first part of the two-part test.

We must conclude that the analysis applied by the Arbitrator in the case at hand is not rationally derived from the CBA. Therefore, the Arbitrator's decision fails to meet the requirements of the essence test. The CBA is silent as to the burden of proof and/or standard of review to be applied in denial of tenure cases. However, we note that the Local Agreement, executed by the University and the local APSCUF unit, sets forth the burden of proof when a candidate is applying to the University for tenure. The Local Agreement provides that the "*tenure candidate must*

*assume the burden of providing substantial evidence that the departmental performance review categories have been met.*" (R.R. at 583a)(emphasis added). The Local Agreement provides that if there is a conflict between it and the CBA, the CBA is controlling. No conflict exists as the Local Agreement merely provides a burden of proof where the CBA is silent. The Arbitrator should have looked to the Local Agreement to supplement the terms of the CBA. Therefore, pursuant to the Local Agreement, in a proceeding to challenge the denial of tenure, Grievant bears the burden to establish that there is substantial evidence that she met the departmental performance review categories for tenure. In the case at hand, the Arbitrator wrongly placed the burden of proof on the University to establish that it had reasonable and sound basis for denying tenure.

Accordingly, we must vacate the award and remand the matter to the Arbitrator for further proceedings consistent with this opinion.[7]

### *O R D E R*

AND NOW, this 16th day of January, 2007, the award of the arbitrator is hereby vacated and the matter remanded for further proceedings consistent with the attached opinion.

Jurisdiction is relinquished.

---

7. As we have concluded that this award must be vacated and the matter remanded to the Arbitrator for further proceedings as a result of the application of an incorrect burden of proof, we need not address the issue of whether the Arbitrator used his own unbargained for criteria to evaluate Grievant's tenure application and disregarded the requirements of the CBA.