**BETHEL PARK SCHOOL DISTRICT**

v.

**BETHEL PARK FEDERATION OF TEACHERS, LOCAL 1607, American Federation of Teachers, AFL–CIO (Federation), Appellant.**

Commonwealth Court of Pennsylvania.

Argued June 4, 2012.

Decided July 30, 2012.

Stephen H. Jordan, Pittsburgh, for appellant.

Falco A. Muscante, Pittsburgh, for appellee.

BEFORE: LEADBETTER, Judge, and COVEY, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge COVEY.

Bethel Park Federation of Teachers, Local 1607, American Federation of Teachers, and AFL–CIO (collectively, Federation) appeal the Allegheny County Court of Common Pleas' (trial court) August 4, 2011 order vacating the Arbitrator's award and affirming the Bethel Park School District's (District) decision to terminate Michael W. Lehotsky's (Grievant) employment. There are two issues before the Court: (1) whether the Arbitrator's award was rationally derived from the collective bargaining agreement, i.e., whether it met the essence test; and (2) whether the Arbitrator's award should have been vacated under the public policy exception to the essence test. We affirm.

Grievant has been employed by the District as a seventh grade mathematics teacher since 1991. The District alleges that although Grievant performed satisfactorily early in his career, more recently, his conduct has become unacceptable. Since approximately 2003, Grievant has engaged in various forms of misconduct which have resulted in disciplinary proceedings or formal improvement plans. During the 2008–2009 school year, parents and students reported to the District that Grievant was engaging in unwelcome con-

tact with seventh grade female students which included holding their hands, and/or rubbing their backs or legs when he would assist them.

Before the 2009–2010 school year began, the District required Grievant to be evaluated by psychiatrists to determine whether and under what conditions he could safely return to the classroom. Among the psychiatric experts' recommendations was that Grievant should not have any contact with students outside of a structured classroom setting. In addition to his five teaching periods per day, Grievant had historically conducted a math lab, also known as "Lunch and Learn." During math lab, students with questions could bring their lunches to the classroom and obtain additional assistance, complete assignments that they had missed, or retake tests. The improvement plan prohibited Grievant from conducting a math lab and from contacting students outside of the structured classroom setting. Grievant defied those directives. He met with students during lunch in other teachers' classrooms, continued to have physical contact with them, and engaged in other unacceptable conduct, including making death threats against members of the administration. Because Grievant did not meet the improvement plan conditions, the District concluded that he could not remain employed as a teacher in the District.

By letter dated November 24, 2009, the District's Board of Directors informed Grievant of its intention to discharge him from his employment for violating provisions of Pennsylvania's Public School Code of 1949,[1] as well as the District's own policies prohibiting sexual harassment. The November 24, 2009 correspondence also charged Grievant with unprofessionalism because of his conduct toward colleagues and administrators. The corre-spondence informed Grievant of his right to a hearing before the Board of Directors to determine whether the charges were substantiated or, in the alternative, to challenge his proposed dismissal through the contractual grievance and arbitration procedure.

On December 2, 2009, the Federation informed the District that Grievant preferred to challenge any proposed action through the contractual grievance and arbitration procedure and, on that same date, the Federation submitted a formal grievance on Grievant's behalf, asserting that he was suspended and dismissed from his employment without just cause, in violation of Article 7 of the collective bargaining agreement (CBA). Because the parties were unable to resolve their dispute through the preliminary stages of the grievance procedure set forth in the CBA, the matter was referred to an Arbitrator for full, final and binding resolution.

Hearings were held on June 30, July 1, August 10, August 12, August 25, August 31, September 14, September 28, and October 18, 2010. On February 10, 2011, the Arbitrator sustained the grievance in part. The Arbitrator directed that Grievant's employment discharge be set aside and that he be restored to compensated status, without loss of seniority, effective on the date of the award. The award specified that the time between Grievant's November 2009 suspension and his reinstatement to payroll status is to be regarded as an unpaid, disciplinary suspension. The Arbitrator's award further directed the District to begin compensating Grievant at the rate contemplated by the CBA, effective as of the date of the award. The award allowed the District to delay returning Grievant to classroom teaching until the next academic year, if

---

1. Act of March 10, 1949, P.L. 30, as amended,    24 P.S. §§ 1–101–27–2702.

reinstatement at that time would disrupt the educational process. Between the date of the Arbitration award and Grievant's reinstatement to teaching duties, he could be assigned alternative duties, subject to any limitations in the CBA. According to the award, any time between Grievant's return to compensated status and his return to active duty shall be regarded as paid administrative leave without disciplinary consequences. Upon reinstatement to active teaching duties, Grievant was to be subject to the September 14, 2009 teacher improvement plan, unless the parties mutually agree on alternative conditions for his reinstatement. The Federation's remaining claims for relief, including back pay and benefits were denied because, as stated by the Arbitrator, "persuasive evidence establishes that the Grievant is guilty of grievous misconduct which would ordinarily warrant discharge .... [and] so long as he persisted in his behavior, the Grievant was unfit to teach." Reproduced Record (R.R.) at 35a–36a. The District appealed to the trial court. On August 4, 2011, the trial court vacated the Arbitrator's award and affirmed the District's decision to terminate Grievant's employment. The Federation appealed to this Court.[2]

■ The Federation first argues that the Arbitrator's award should be upheld because it draws its essence from the CBA. Specifically, the Federation contends that the award is within the terms of, and rationally derived from, the CBA. We disagree.

As stated by the Pennsylvania Supreme Court in *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educational Support Personnel Association, PSEA/* *NEA,* 595 Pa. 648, 939 A.2d 855 (2007), the essence test was derived from the United States Supreme Court's decision in *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), wherein, the Court held:

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may, of course, look for guidance from many sources, yet **his award is legitimate only so long as it draws its essence from the collective bargaining agreement.**

*Westmoreland,* 595 Pa. at 661, 939 A.2d at 862–63 (quoting *United Steelworkers,* 363 U.S. at 596, 80 S.Ct. 1358). The *Westmoreland* Court further explained:

> Recently, in *Cheyney University,* [*State System of Higher Education v. State College and University Professional Association (PSEA–NEA),* 560 Pa. 135, 743 A.2d 405 (1999)] we reaffirmed the essence test and set forth a clear two-prong approach to judicial review of grievance arbitration awards: 'First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement.'

*Westmoreland,* 595 Pa. at 661, 939 A.2d at 863 (quoting *Cheyney Univ.,* 560 Pa. 135, 150, 743 A.2d 405, 413 (1999)).

---

**2.** "The standard of review to be applied to the case at hand is one of deference to the arbitrator's award. It is well-settled that our scope of review of a grievance arbitration award is the essence test." *Slippery Rock Univ. of Pa. v. Ass'n of Pa. State Coll. & Univ. Faculties,* 916 A.2d 736, 740 n. 3 (Pa.Cmwlth. 2007) (citation omitted).

The issue before the Arbitrator in the instant matter was whether Grievant was discharged for just cause. Article 7 of the CBA specifically states: "No professional employee shall be disciplined, reprimanded, reduced in rank or compensation without just cause." R.R. at 48a. The issue, therefore, is within the CBA's terms. Accordingly, both parties agree that the Arbitrator's award meets the first prong of the essence test.

Concerning the second prong of the essence test, the Federation argues that because just cause is not defined in the CBA, pursuant to *Office of Attorney General v. Council 13, American Federation of State, County Municipal Employees, AFL–CIO,* 577 Pa. 257, 844 A.2d 1217 (2004), the Arbitrator was within his authority to define it. Thus, the Federation contends the award is rationally derived from the CBA. The District, on the other hand, argues that the Arbitrator based his award on a due process procedure outlined in the District's Unlawful Harassment Policy which is not part of the CBA; hence, the award does not meet the second prong of the essence test. We agree with the District.

We recognize that the *Attorney General* Court held:

By failing to agree upon and incorporate a definition of just cause into the collective bargaining agreement, and by casting the arbitrator into the role of resolving disputes arising under the collective bargaining agreement, we believe that it is clear that the parties intended for the arbitrator to have the authority to interpret the terms of the agreement, including the undefined term 'just cause' and to determine whether there was just cause for discharge in this particular case.

*Id.,* 577 Pa. at 268–69, 844 A.2d at 1224. However, in this case, the Arbitrator did not reinstate Grievant based on a finding that the District did not prove just cause to discharge him. Instead, the Arbitrator specifically stated: "Grievant has not been spared discharge because he is not guilty, but because the District violated significant due process rights in conducting its investigation." R.R. at 36a. The only due process clause in the CBA is Article 12, which essentially provides that, before a teacher can be summoned to a meeting that may result in discipline, he must receive notice in writing and have the opportunity to have a representative of the Federation accompany him. *See* R.R. at 80a–81a. It is undisputed that the CBA does not contain a due process procedure for responding to sexual harassment complaints. As such, the Arbitrator clearly went outside the CBA in making his determination.

This Court has recently vacated an arbitrator's award for basing his ruling upon a term not contained in the CBA. In *Pennsylvania Turnpike Commission v. Teamsters Local Union No. 77,* 45 A.3d 1159 (Pa.Cmwlth.2012), the Arbitrator's award was based on the Arbitrator's interpretation of the phrase "pursuant to the CBA." However, that phrase was not in the CBA; rather, it was contained in an outside Settlement Agreement. Because the Arbitrator went outside the CBA to make his determination, this Court found that "the Arbitrator's Award [was] not rationally derived from the CBA." *Id.*

■ In the instant case, since the CBA did not set forth a due process procedure for responding to sexual harassment claims, the Arbitrator considered the procedure outlined in the District's Unlawful Harassment Policy. *See* R.R. at 33a–35a. In doing so the Arbitrator went outside the CBA to make his determination. Thus, the Arbitrator's award was not ra-

tionally derived from the CBA.[3] *See also Slippery Rock Univ. of Pa. v. Ass'n of Pa. State Coll. & Univ. Faculties (Slippery Rock)*, 916 A.2d 736 (Pa.Cmwlth.2007) (wherein this Court held that the analysis applied by the arbitrator was not rationally derived from the CBA because the arbitrator went outside the CBA to determine the burden of proof to be applied and thus vacated the award). Accordingly, the Arbitrator's award does not meet the second prong of the essence test.[4]

▬▬ We note that, pursuant to *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985):

> The essential requirements of due process … are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Id.*, 470 U.S. at 546, 105 S.Ct. 1487 (citations omitted). In the instant case, the record contains the following written notices to Grievant: notification of formal conference/Loudermill hearing dated May 4, 2009 (scheduling a hearing for May 7, 2009, which Grievant attended); notification of the result of formal conference/Loudermill hearing dated May 11, 2009; notification for follow-up formal conference/Loudermill hearing (scheduled for June 1, 2009); the resulting settlement agreement signed by Grievant on June 15, 2009; teacher improvement plan signed by Grievant on September 14, 2009; notification of formal conference/Loudermill hearing dated October 29, 2009 (scheduling a hearing for November 3, 2009, which Grievant waived his attendance); notification of result of formal hearing/Loudermill hearing dated November 9, 2009; notification of follow-up to formal conference/Loudermill hearing dated November 12, 2009 (scheduling a hearing for November 16, 2009, which Grievant again waived his attendance); and notification of result of follow-up hearing/Loudermill hearing dated November 18, 2009. R.R at 99a–101a, 102a–103a, 104a–106a, 107a–109a, 117a–119a, 120a–123a, 124a–126a, 127a–129a, 130a–132a. Clearly, Grievant had

---

**3.** The Concurrence states that "neither party argues that the [District's] Unlawful Harassment Policy is not to be considered part of the CBA." Concurring Op. at 163 n. 2. However, the District expressly argues in its brief that: "procedural 'due process' is not dependent upon investigation of employee misconduct under a literal application of Board Policy **that is not part of the CBA**" District's Br. at 36 (emphasis added).

**4.** The Concurrence "do[es] not agree that the Arbitrator's award was not rationally derived from the collective bargaining agreement (CBA) because … **I conclude** Michael Lehotsky (Grievant) waived" his due process violations. Concurring Op. at 162 (emphasis added).

ed). The Concurrence further "believe[s] the Arbitrator erred in determining that Grievant was not given due process." Concurring Op. at 163. Moreover, the Concurrence, contrary to the Arbitrator's finding, concluded "[f]or that reason, **I believe** there is just cause for discharging Grievant." Concurring Op. at 162 (emphasis added). However, "Courts … are prohibited from second-guessing the arbitrator's fact-finding…." *U.S. Postal Serv. v. Nat'l Ass'n of Letter Carriers*, 839 F.2d 146, 149 (3rd Cir.1988). "[A] court may not reject those findings simply because it disagrees with them." *United Paperworkers Intern. Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

sufficient pre-discharge notices and opportunities to respond to the charges against him to satisfy the essential due process requirements.

■■ Finally, even if the Arbitrator's award satisfied the essence test, the trial court properly vacated the award on the basis that it violates the well-defined and established public policy of protecting students from sexual harassment during school hours, on school property.[5] The District has a specific policy against Unlawful Harassment, which provides that "it shall be the policy of the [D]istrict to maintain an educational environment in which harassment in any form is not tolerated." R.R. at 66a. Harassment for purposes of the policy includes "sexual harassment" and includes "physical conduct" and "touching."[6] R.R. at 66a–67a. In addition,

[c]onsistent with the Supreme Court's decision in *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 [112 S.Ct. 1028, 117 L.Ed.2d 208] (1992) (holding that a student may sue a school district for damages based on sexual harassment by a teacher), OCR [Office of Civil Rights] has applied Title IX to prohibit sexual harassment of students by school employees.

Dept. of Education, Office for Civil Rights, Sexual Harassment Policy Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, 62 Fed.Reg. 12034, 12039 (1997). Moreover, "[i]t now is well established that there is an explicit, well-defined, and dominant public policy against sexual harassment in the workplace." *Phila. Housing Auth. v. Am. Fed'n of State, Cnty. and Mun. Emps.*, 956 A.2d 477, 483 (Pa. Cmwlth.2008).

The District's Unlawful Harassment Policy cites as its authority: Title IX of the Civil Rights Act of 1964, 20 U.S.C. § 1681, and the Pennsylvania Human Relations Act.[7] Notwithstanding that the Arbitrator did not make an express ruling finding Grievant guilty of sexual harassment, his findings leave no doubt that Grievant, an adult male in power over the seventh grade female students, persisted in unwelcome[8] inappropriate touching during the performance of academic work which made the seventh grade female students uncomfortable.

The Arbitrator specifically stated **"there appears to be sufficient evidence that some inappropriate touching occurred.... A number of female students reported to the principal and the assistant principal that the Grievant had made them uncomfortable when he assisted them with classroom assignments. They testified that the Grievant would**

---

**5.** The Concurrence asserts that this portion of the opinion is "superfluous." Concurring Op. at 162. However, because the trial court used this as its basis for vacating the Arbitrator's award, and because the Arbitrator's award so blatantly contravenes public policy, it cannot go without discussion.

**6.** The Concurrence asserts that: "The Majority determined that **sexual harassment includes physical conduct and touching....**" Concurring Op. at 162 n. 1 (emphasis added). The Majority did not determine or define sexual harassment, rather it quoted the District's Unlawful Harassment Policy which is predicated on the Sexual Harassment Policy from the U.S. Department of Education, Office for Civil Rights. *See:* Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.

**7.** Act of October 27, 1955, *as amended,* 43 P.S. §§ 951–963.

**8.** *See Chancellor v. Pottsgrove Sch. Dist.,* 529 F.Supp.2d 571 (E.D.Pa.2008) (wherein, the Court ruled that sexual advances by a high school teacher toward a high school student are unwelcome as a matter of law).

either hold their hands for protracted periods of time or would caress their backs, necks and shoulders." R.R. at 26a–27a (emphasis added). The Arbitrator in finding the female students credible concluded that "persuasive evidence establishes that grievant is guilty of grievous misconduct which would ordinarily warrant discharge." R.R. at 35a (emphasis added). The Arbitrator continued: "Grievant has not been spared discharge because he is not guilty...." R.R. at 36a (emphasis added).

This Court explained in *Shamokin Area School District v. American Federation of State, County, and Municipal Employees District Council 86*, 20 A.3d 579 (Pa. Cmwlth.2011):

> The public policy exception espoused in [*Westmoreland*] represents **the current state of the law. It is a narrow exception prohibiting a court from enforcing an arbitrator's award that contravenes public policy.** As explained by our Supreme Court, 'a court should not enforce a grievance arbitration award that contravenes public policy. Such public policy, however, must be well-defined, dominant, and ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.' *Westmoreland*, 595 Pa. at 666, 939 A.2d at 865–66.

*Id.*, 20 A.3d at 582 (emphasis added). The *Shamokin* Court specifically held:

> [T]he test is not whether [the grievant's] conduct violated an established public policy but whether the Arbitrator's award of reinstating [the grievant] contravenes an established public policy. Here, the Arbitrator's award of reinstating [the grievant] is not at variance with

the established public policy of protecting students from violence on school property. Thus, we hold that the trial court improperly applied the narrow public policy exception established in *Westmoreland.*

*Id.*, 20 A.3d at 583. In *Shamokin*, a groundskeeper who vented about a supervisor by screaming in a garage which was isolated from students, was reinstated conditioned upon a one-year probation and attendance at an anger management program. The *Shamokin* Court specifically stated: "While we recognize that reinstating a school district employee who had actually struck a student, bullied a student, or threatened violence upon a student on school grounds, could very well trigger the established public policy of protecting students from violence on school property, this is not such a case." *Id.*, 20 A.3d at 583.

The instant case, however, is exactly that case. The Arbitrator's award reinstating Grievant to the classroom after finding that he was guilty of inappropriately touching seventh grade female students during academic lessons unequivocally violates public policy as pronounced in Title IX of the Civil Rights Act, the Federal Civil Rights Act,[9] the Pennsylvania Human Relations Act, as well as the District's zero-tolerance sexual harassment policy. In addition, the likelihood of Grievant's "grievous misconduct" continuing, and thus placing the safety and well-being of the seventh grade female students in jeopardy, was well founded by the Arbitrator, wherein he stated:

> Because the Grievant had been repeatedly and unequivocally cautioned that he must refrain from physical con-

9. The Federal Civil Rights Act of 1964 (Title VII) governs sexual harassment in the workplace. 42 U.S.C. § 2000e.

tact with students. . . . The Grievant's insubordinate contact was compounded by his refusal to respect supervisory directive that he not meet with students during lunchtime. . . . **The Grievant was not to meet with students during extracurricular activities or school events and he knew or should have known that lunchtime contact with students in any context was a violation of his improvement plan. The Grievant was not attempting to conscientiously comply with the plan, but attempting to evade its restrictions.** R.R. at 28a–29a (emphasis added). Thus, *Westmoreland* applies, and the trial court properly vacated the Arbitrator's award.

For all of the above reasons, the trial court's order is affirmed.

### ORDER

AND NOW, this 30th day of July, 2012, the Allegheny County Court of Common Pleas' August 4, 2011 order is affirmed.

CONCURRING OPINION BY Senior Judge FRIEDMAN.

Because I disagree that the trial court properly vacated the Arbitrator's award on the basis that it violates the well-defined public policy of protecting students from *sexual harassment,* I concur in the result only.[1] I do not agree that the Arbitrator's award was not rationally derived from the collective bargaining agreement (CBA) because absent the due process violations, which I conclude Michael Lehotsky (Grievant) waived, the Arbitrator determined that Grievant would be discharged for grievous misconduct. For that reason, I believe there is just cause for discharging

Grievant. Accordingly, I conclude that the majority's discussion of the public policy exception is superfluous.

The Majority holds that the issue of whether Grievant was discharged for "just cause" is within the terms of the CBA, but that the Arbitrator's award cannot be rationally derived from the CBA, and, therefore, does not meet the second prong of the essence test. Specifically, the Majority holds that the Arbitrator imposed additional due process requirements beyond the procedural due process components of the contractual "just cause" standard in the CBA by looking at Bethel Park School District's (School District) Unlawful Harassment Policy (Harassment Policy).

Once an issue is determined to be within the terms of the CBA, the award will be upheld if the arbitrator's interpretation can be rationally derived from the CBA. *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA),* 560 Pa. 135, 150, 743 A.2d 405, 413 (1999). An arbitrator's award will only be vacated "where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the [CBA]." *Id.* Whether the award was rational under the contract is the appropriate inquiry. *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educational Support Personnel Association, PSEA/NEA,* 595 Pa. 648, 661, 939 A.2d 855, 863 (2007).

Here, the Arbitrator determined that there was no just cause because the School District violated Grievant's due process rights. The term "just cause" was not

---

1. Although I recognize that there is a distinct public policy against sexual harassment, the Arbitrator did not find that Michael Lehotsky's conduct constituted sexual harassment. The Arbitrator only found inappropriate touching, not sexual harassment. The Majority determined that sexual harassment includes physical conduct and touching; however, physical conduct and touching do not necessarily constitute sexual harassment.

defined by the parties in the CBA. It is clear that, by not agreeing upon and incorporating a definition of "just cause" into the CBA and by placing the arbitrator into the role of resolving disputes arising under the CBA, the parties intended for the arbitrator to have the authority to interpret the terms of the agreement, including the undefined term "just cause," and to determine whether there was just cause for discharge. *Office of the Attorney General v. Council 13, American Federation of State, County & Municipal Employees, AFL–CIO,* 577 Pa. 257, 268–69, 844 A.2d 1217, 1224 (2004). Whether Grievant was given due process is a "just cause" consideration. *Cheyney University,* 560 Pa. at 154, 743 A.2d at 416 (factual determination of due process rationally derived from the CBA). Thus, the Arbitrator's consideration of whether Grievant was given due process was rationally derived from the CBA. However, I believe the Arbitrator erred in determining that Grievant was not given due process.[2]

In *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985), the Supreme Court determined that due process requires that "[t]he tenured public employee [be] entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."

Here, Grievant was given notice of the charges against him, an explanation of the employer's evidence and an opportunity to

present his side of the story. However, Grievant voluntarily waived his *Loudermill* hearing. Thus, he waived his opportunity to object to any due process violations. Accordingly, the Arbitrator erred in finding a due process violation.

Absent the due process violation, the Arbitrator found Grievant unfit to teach and would have discharged him.[3]

Accordingly, I concur in the result only.

---

**2.** Contrary to the Majority's assertion, neither party argues that the School District's Unlawful Harassment Policy is not to be considered part of the CBA.

**3.** The Arbitrator determined that:
Persuasive evidence establishes that the Grievant is guilty of grievous misconduct which would ordinarily warrant his discharge. Had the District predicated its disciplinary determination upon a fair and im-

partial investigation, the Arbitrator would have been loathe to disturb the District's conclusion that, so long as he persisted in his behavior, the Grievant was unfit to teach. The Grievant has not been spared discharge because he is not guilty, but because the District violated significant due process rights in conducting its investigation.
(Arbitration Award, at 32–33.)