# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Franklin Regional School District, : 
                   Appellant : 
 : 
                v. : No. 114 C.D. 2015
 : 
Franklin Regional Education : 
Association : 
 : 
Franklin Regional School District : 
 : 
                v. : No. 147 C.D. 2015
 : Submitted: November 17, 2015
Franklin Regional Education : 
Association, : 
                   Appellant :

BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
                HONORABLE ROBERT SIMPSON, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE LEADBETTER**              **FILED: January 7, 2016**

Franklin Regional School District (the District) appeals and Franklin Regional Education Association (the Association) cross appeals from an order of the Court of Common Pleas of Westmoreland County that 1) granted the District's petition to vacate an arbitrator's award sustaining the grievance of music teacher Philip Wonderling and setting aside his discharge; and 2) modified the remedy of

unqualified reinstatement imposed by the arbitrator in the arbitration award.[1] Whereas the arbitrator ordered that Wonderling's employment be reinstated without conditions and that he otherwise be made whole for any losses incurred during the period of discharge, common pleas ordered prospective reinstatement subject to conditions. On appeal, we consider whether common pleas erred in granting the petition to vacate the award based on the Supreme Court's narrow public policy exception to the essence test,[2] which provides that "a court should not enforce a grievance arbitration award that contravenes public policy." *Westmoreland Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educ. Support Pers. Ass'n, PSEA/NEA (Westmoreland I)*, 939 A.2d 855, 863 (Pa. 2007). Having determined that common pleas improperly reviewed and reweighed the factual record, we reverse.

The relevant facts as found by the arbitrator are as follows.[3] Employed by the District for seventeen years, Wonderling's yearly evaluations had always been "satisfactory" and he had never been disciplined. During the time period at issue, he taught instrumental music to fourth and fifth graders at three separate elementary school buildings, which included both large and small group instruction. The optional large-group instruction, "band class," involved approximately ninety students and took place before normal school hours. Small-group instruction involved two to eight students and took place in the music room

---

[1] In March 2015, this Court entered an order consolidating the above-captioned appeals.

[2] The District initially argued that the essence test was not met, but withdrew that argument on appeal to common pleas and failed to include any such averment in its concise statement of errors complained of on appeal. Accordingly, the District waived any issue involving the essence test. Rule 302(a) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 302(a).

[3] An arbitrator's "findings of fact are not reviewable on appeal, and as long as he has arguably construed or applied the collective bargaining agreement, an appellate court may not second-guess his findings of fact or interpretation." *Coatesville Area Sch. Dist. v. Coatesville Area Teachers' Ass'n, PSEA*, 978 A.2d 413, 415 n.2 (Pa. Cmwlth. 2009).

of the respective elementary school. Students attended small-group lessons several times per week, leaving their regularly scheduled class at a specific day and time to report to the music room. June 3, 2014 Arbitration Award at 3-5.

Female student EK participated in both large and small group instruction. On March 20, 2013, EK did not attend the large-group instruction. When she also failed to show up for her scheduled small-group instruction, Wonderling sent another student to EK's regularly scheduled class to retrieve her and accompany her to the small-group session. Allegedly upset by the retrieval, which was standard practice for a no-show, EK was "non-participative" in the small-group instruction. *Id*. at 5. Wonderling, therefore, released her to return to her normal classroom.

When Wonderling was on bus duty the next day, two students advised him that "EK had gone to elementary Principal Buffone to get Mr. Wonderling into trouble." *Id*. The girls allegedly "were amused and giggling in their behavior while telling this to Mr. Wonderling." *Id*. Later that same day, EK's mother called an elementary school counselor and alleged that Wonderling had inappropriately touched EK and that, consequently, EK had wet her pants that day on the bus and had tied her jacket around her waist to hide it. EK's mother stated that this incident "was the final straw [because] he had been touching her for over one year since she was in the fourth grade." *Id*. at 6. There were no previous allegations.

Consequently, the school commenced an investigation. The result was Joint Exhibit 4, a compilation of the contemporaneous testimony and notes of the school personnel who had conducted the investigation and had interviewed the seven female students associated with the incident. The arbitrator admitted Joint Exhibit 4 over the Association's continuing hearsay objections, ruling that the parties would have to rely on his thirty-five years of experience to sort out facts from opinion. *Id*. at 10. In support, he opined that it was the only way to

3

expeditiously obtain the facts and that the alternative would have been for the minors to testify.

Subsequently and as required by law, the District contacted the Murrysville Police Department and Westmoreland County Children and Youth Services (CYS). Although both entities conducted separate investigations, neither found grounds to prosecute or proceed any further. The arbitrator observed as follows regarding the investigations:

> These agencies had the opportunity to directly question the minors that made the allegations as well as their parents or guardians. They then made a conclusion as to the truth of the matter based on the facts and credibility of the accuser. If these authorities elected, after their detailed investigation to not proceed further, it does not add credibility to the allegations of the student EK and other supporting student statements. I must accept the decision of these investigations and realize that they had the advantage of direct contact in questioning of the minor accusers.

*Id* at 12-13.

Following Wonderling's suspension, the Association alleged a violation of the just cause provision of the collective bargaining agreement (CBA), which provided, in pertinent part, as follows: "No member of the bargaining unit shall be rated unsatisfactory, discharged, disciplined, suspended, furloughed, reprimanded, reduced in rank or compensation, or deprived of any professional advantage without just cause." Joint Exhibit No. 1, Section IX.A of the CBA at 5; Reproduced Record (R.R.), Volume (Vol.) II at 388a. Wonderling filed his grievance and, subsequently, the District charged him with immorality, incompetency and willful violation of school laws. The parties agreed to expedite the grievance to arbitration, where the arbitrator considered the issue of whether there was just cause for Wonderling's discharge and the appropriate remedy, if any.

4

Following a two-day hearing in February 2013, the arbitrator determined that there was no just cause, concluding that the allegations were unfounded and unsupported by the facts. Specifically, he discounted the accounts of EK's mother, EK and the other minor girls. In rejecting the mother's testimony, he found it to be inconsistent, expansive and not credible. June 3, 2014 Arbitration Award at 13-14. Regarding EK's lack of credibility, he cited the objective testimony of those who knew her indicating that she tended to try and get others into trouble and boasted of getting Wonderling into trouble. *Id*. at 14-15. In addition, noting that EK and her girlfriends were in the same homeroom and usually on the same bus, the arbitrator determined that the girls colluded and fabricated stories. In support, he relied on testimony from the librarian, the general music teacher who shared bus duty with Wonderling, the girls' homeroom teacher and a chaperone who had roomed with EK and some of her friends during a three-day field trip. The arbitrator also considered the fact that neither the police nor the CYS proceeded against Wonderling.

Further, emphasizing that the District was alleging inappropriate contact and not sexual relations, the arbitrator concluded that Wonderling's admitted behavior similarly did not rise to the level to support discharge. This behavior included, *inter alia*, so-called "snake bites," which entailed squeezing a child's knee between the thumb and forefingers, and "good mannered threats to use the slapstick for discipline."[4] *Id*. at 13, 18. Regarding the snake bites, allegedly used to regain a child's attention, the arbitrator noted Wonderling's testimony that he had been taught to use touching when dealing with his autistic son. *Id*. at 18. In

---

[4] A slapstick is "a percussion instrument that is used to mimic the sound of a whip crack or a slap or anything like that." February 12, 2014 Hearing, N.T. at 144; R.R., Vol. I at 155a. It had been used in a band piece called "Sleigh Ride." February 13, 2014 Hearing, Notes of Testimony (N.T.) at 300; R.R., Vol. II at 334a.

summary, the arbitrator concluded that all the testimony indicated that Wonderling tried to make music fun and involve the students by joking with them. *Id*. Having determined that Wonderling's admitted contact was a reasonable part of his duties, the arbitrator sustained the teacher's grievance and set aside his discharge.[5]

Subsequently, the District filed a petition to vacate the arbitrator's award, arguing that it contravened public policy. Common pleas granted the petition, determining that "Wonderling has admitted to behavior that constitutes an ongoing course of conduct directed at various female students that violated school district policy." Common Pleas January 6, 2015 Opinion at 4. It concluded, therefore, as follows: "[T]he arbitrator's award is not in accord with established public policy of protecting students from impermissible touching by their teachers." *Id*. Accordingly, the court crafted its own remedy, which included prospective reinstatement with conditions.[6] Both the District's appeal and the Association's cross appeal to this Court followed.

On appeal, we consider whether common pleas erred in granting the petition to vacate the arbitration award based on the public policy exception. In addition, both parties question whether the court erred in modifying the award,

---

[5] Specifically, the arbitrator directed that Wonderling's employment be reinstated and that he be made whole for any loss of income during the discharge period, less any monies he earned or received from unemployment compensation or similar income. In addition, the arbitrator directed that all benefits and pension eligibility be reinstated and that he be reimbursed for any out-of-pocket expenses that he used for health insurance for him or his family during the discharge period. June 3, 2014 Arbitration Award at 20.

[6] Specifically, the court reinstated Wonderling's suspension without pay, effective May 25, 2013, until the first day of the second semester of the 2014-2015 school year, at which time he would be reinstated "upon proof that he has completed an evaluation and treatment directed at correcting the behavior he engaged in, that constituted inappropriate touching and harassment, to the satisfaction of the Superintendent . . . ." Common Pleas January 6, 2015 Order at 1. Further, the court directed that, "[u]pon restoration to employment[,] Philip Wonderling shall abide by all conditions reasonably imposed by the . . . District to protect students from any further misconduct." *Id*. at 2.

6

which subsumes the District's issue of whether the court erred in stating that it would grant the District's requested relief but then did not grant that relief in its entirety by reinstating the termination. Further, the District questions whether the arbitrator erred in using a "beyond a reasonable doubt" standard of proof in considering the evidence. As the party below asserting that the award contravened public policy, the District carried the burden of establishing that the award violated positive law. *Pa. Tpk. Comm'n v. Teamsters Local Union No. 250*, 948 A.2d 196, 207 (Pa. Cmwlth. 2008). The determination of whether the award violated public policy is a question of law, subject to our plenary review. *Phila. Hous. Auth. v. Am. Fed'n of State, County, and Mun. Employees, Dist. Council 33, Local 934*, 52 A.3d 1117, 1121 (Pa. 2012).

It is now axiomatic that "an arbitration award will be upheld if it can rationally be derived from the collective bargaining agreement, unless it contravenes public policy." *City of Bradford v. Teamsters Union No. 110*, 25 A.3d 408, 413 (Pa. Cmwlth. 2011). Our three-step analysis for application of the public policy exception provides that the court 1) identify the nature of the conduct leading to the discipline; 2) determine if that conduct implicates a well-defined and dominant public policy; and 3) determine if the arbitrator's award poses an unacceptable risk that it will undermine the implicated policy and cause the public employer to breach its lawful obligations or public duty, given the particular circumstances at hand and the factual findings of the arbitrator. *Id*. at 414.

We turn to the first step of the three-part analysis: identifying the conduct leading to the discipline. Mindful that the arbitrator discounted the allegations leading to the charges, the conduct at issue consists only of Wonderling's admitted behavior. Whereas the arbitrator determined that the teacher's admitted behavior did not rise to the level to support a discharge and that there were no allegations of harassment, common pleas concluded that it invoked

7

the public policy exception and constituted harassment under the District's policies. In so concluding, however, the court referenced and reinterpreted the discounted evidence from the female students, emphasizing that the arbitrator had admitted such evidence into the record. Even though the arbitrator chose to admit the discounted testimony over the Association's objection, he discredited it. Further, he specifically found no touching of a student in any sensitive personal area, no violation of District policies prohibiting harassment, or abuse. He found further that the touching to which Wonderling admitted was reasonable and not inappropriate. June 3, 2014 Arbitration Award at 16-19. Common pleas was bound by the arbitrator's fact-findings, which should have formed the basis for its analysis of the applicability of the public policy exception. *See Bethel Park Sch. Dist. v. Bethel Park Fed'n of Teachers*, 55 A.3d 154, 159 n.4 (Pa. Cmwlth. 2012), *appeal denied*, 62 A.3d 380 (Pa. 2013) (reiterating that courts are prohibited from second-guessing an arbitrator's fact-findings and may not reject his or her findings simply because it disagrees with them); *Pleasant Valley Sch. Dist. v. Schaeffer*, 31 A.3d 1241, 1246 (Pa. Cmwlth. 2011) (stating that "[t]he arbitrator made specific findings about the grievant's misconduct, and *those findings* formed the foundation to the analysis of the public policy exception"). (Emphasis added). Accordingly, mindful that the parties bargained for the arbitrator's determination of just cause, we conclude that common pleas overreached when it considered and reinterpreted the discounted evidence and reweighed the accepted evidence to determine that there was a basis for applying the public policy exception.

We turn now to the second part of the analysis: whether the conduct implicates a well-defined and dominant public policy. In support of its decision, common pleas cited the "established public policy of protecting students from impermissible touching by their teachers." Common Pleas' January 6, 2015 Opinion at 4. The District contends that Wonderling's admitted conduct

8

contravened that alleged public policy, citing in support *Bethel Park*. In *Bethel Park*, the district discharged grievant, *inter alia,* for violating the district's policies prohibiting sexual harassment. Parents and students had alleged that he engaged in unwelcome contact with seventh grade female students, which included hand-holding and/or rubbing their back or legs when assisting them in his capacity as a math teacher. This Court affirmed common pleas' order vacating the arbitrator's award, holding that, "[t]he Arbitrator's award reinstating Grievant to the classroom after finding that he was guilty of inappropriately touching seventh grade female students during academic lessons unequivocally violates public policy . . . ." *Bethel Park*, 55 A.3d at 161. We find *Bethel Park* to be distinguishable, in light of the findings of the arbitrator here. Accordingly, common pleas made an unwarranted leap from the arbitrator's decision in determining that Wonderling's conduct constituted harassment such that it contravened a public policy prohibiting impermissible touching by teachers.

The third step of the analysis requires us to consider whether "the arbitrator's award poses an unacceptable risk that it will undermine the implicated policy and cause the public employer to breach its lawful obligations or public duty . . . ." *City of Bradford*, 25 A.3d at 414. The question here, therefore, is whether the arbitrator's unqualified reinstatement of Wonderling to his position poses an unacceptable risk that will undermine the public policy of protecting students from impermissible touching by their teachers and cause the District to breach its lawful obligations or public duty. This inquiry encompasses "consideration of the particular circumstances of the case and any attendant aggravating or mitigating factors." *Id*. at 415.

Here, the arbitrator considered Wonderling's unblemished record and accepted his testimony that he was never alone with a student and that, if such a situation arose, he moved to a more public area, postponed the meeting or invited

9

another student into the classroom.  June 3, 2014 Arbitration Award at 18.  In addition, in the absence of EK's testimony and in light of the fact that he did not know her, the arbitrator "reviewed the transcript to determine credibility through those that do know her, had her in class and questioned and observed her."  *Id*. at 14.  In rejecting the testimony of EK and her friends, the arbitrator also considered the fact that both the police and the CYS considered the allegations in Joint Exhibit 4 and neither chose to proceed against Wonderling.  *Id*. at 16.  Accordingly, the arbitrator chose to reinstate Wonderling's employment and make him whole, without requiring any counseling or continuing education.

On the other hand, common pleas determined that only prospective and conditional reinstatement would satisfy the public policy of protecting students from impermissible touching by their teachers and cause the District to be compliant with its lawful obligations or public duty.  We have determined, however, that common pleas improperly viewed the situation through another lens and usurped the arbitrator's fact-findings.  Further, the District acknowledged that Wonderling's conduct was not sexual in nature and that no criminal charges were pursued.  We conclude, therefore, that the arbitration award does not pose an unacceptable risk of causing the District to flout its legal obligations and public duty.  Accordingly, not only did the District fail to satisfy the narrow public policy exception, but the court also erred in modifying the bargained-for award.

Finally, we consider whether the arbitrator erred in using a "beyond a reasonable doubt" standard of proof in rendering his award.  The arbitrator chose to use that standard in light of the fact that a discharge was at issue, involving, *inter alia*, an immediate loss of income, a blemish on an employee's record and potential difficulty in securing subsequent employment.  In determining that the District did not prove the allegations pursuant to that standard of proof, however, the arbitrator noted that he would have rendered the same decision had he used the

10

preponderance of evidence standard. In any event, the arbitrator has some discretion in choosing a standard of review. *See* Elkouri and Elkouri, How Arbitration Works, Chapter 15, Section 3(D)(ii)(a) at 15-24, 15-27 (7th ed. 2012) (acknowledgement that many arbitrators apply higher standards of proof in cases involving stigmatizing behavior). Accordingly, the District's argument is without merit.

In conclusion, common pleas erred in essentially rendering new fact-findings and in using the narrow public policy exception to impermissibly modify an award that was bargained-for and which neither party ultimately disputed satisfied the essence test. *See Westmoreland I*, 939 A.2d at 863 (courts are not to review the merits or reasonableness of the arbitrator's award). Accordingly, we reverse.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Franklin Regional School District,    :
                    Appellant    :
                              :
               v.           :    No. 114 C.D. 2015
                              :
Franklin Regional Education     :
Association                    :
                              :
Franklin Regional School District  :
                              :
               v.           :    No. 147 C.D. 2015
                              :
Franklin Regional Education     :
Association,                   :
                   Appellant    :

# **O R D E R**

AND NOW, this 7th day of January, 2016, the order of the Court of Common Pleas of Westmoreland County is hereby REVERSED.

_____
**BONNIE BRIGANCE LEADBETTER,**
Judge