OPINION BY
JUDGE BROBSON
The Commonwealth Association of School Administrators, Teamsters Local 502 (Association), appeals from an order of the Court of Common Pleas of Philadelphia County (trial court), granting School District of Philadelphia’s (District) petition to vacate an arbitration award. For the reasons that follow, we reverse.
The facts underlying this matter are not in dispute. The Association is a labor union that represents school principals and other administrators. The Association brings the instant appeal on behalf of Marla Travis-Curtis (Travis-Curtis), a former principal of multiple schools located in the District.
Travis-Curtis was first hired by the District as a substitute teacher in 1985. She was hired as a special education teacher at Bok High School in 1991. She held several other positions within the District, including a counselor at Overbrook High School, an assistant principal at Finletter Elementary School, an assistant principal at Woodrow Wilson Middle School from 2002 to 2008, and a principal at Lamberton Elementary in 2003. The District appointed her as principal of Lamberton High School in 2011, where she served until 2013 when Lamberton High School closed permanently. From 2003 until 2013, she served as principal for both Lamberton High and Elementary Schools, and she continued as principal of Lamberton Elementary School[1] until her employment was terminated in 2015.
Pennsylvania requires every school district to administer to its students a standardized examination called the Pennsylvania System School Assessment (PSSA). The PSSA measures students’ competency in various academic subjects and is also used to rate faculties, administrators, schools, and districts based on the student bodies’ performance. While principal at Lamberton, Travis-Curtis implemented stringent test security policies. Specially trained test coordinators deposited blank tests into a locked room, delivered the tests to classrooms immediately prior to testing, then retrieved the tests, sealed them, and returned them to the locked room until they could be sent out to be graded.
In 2011, the Pennsylvania Department of Education (Department) conducted a statistical analysis which revealed a high number of instances where an incorrect answer on a standardized test was erased and the correct answer was marked instead, referred to in the analysis as “beneficial erasures.” The Department instructed the District to investigate several of the identified schools, including Lamberton. Based on its investigation, the District concluded that the beneficial erasures at several schools, including Lamberton, were the result of improper conduct. Specifically, the investigation determined that school employees altered the tests in an attempt to bolster the school’s overall performance on the PSSA. The District alleged that Travis-Curtis, who was the principal of Lamberton during the time covered by the analysis, actively participated in the improper conduct or knowingly allowed the conduct to continue. Alternatively, the Dis *931 trict alleged that, if Travis-Curtis was unaware, she acted negligently by failing to discover and prevent such misconduct. On January 15, 2014, the District terminated Travis-Curtis’ employment based on these allegations.
Effective September 1, 2013, the Association and the District entered into a Collective Bargaining Agreement (CBA), which set forth the terms and conditions of employment for administrators employed by the District. Article 2, Section 2.1 of the CBA states that the District “shall retain the sole right to hire, discipline or discharge for cause, lay off, transfer and assign Administrators.” (Reproduced Record (R.R.) at 22a.) The Association filed a grievance pursuant to Article 5 of the CBA. Article 5 of the CBA defines a grievance as “a claim -of a violation of any specific provision of this. Agreement or of any Personnel Policy or Regulation which has been or. shall be adopted by the [District].” (R.R. at 27a.)
Pursuant to the procedures set forth in the CBA, the Association filed a grievance on January 23, 2014, contesting the District’s decision to terminate Travis-Curtis’ employment. A single Arbitrator held hearings on November 18, 2014, February 20, 2015, March 20,2015, and April 8, 2015.
The parties stipulated to this statement of the issue before the arbitrator: “[w]as [Travis-Curtis] terminated for just cause? If not, what shall the remedy be?” (R.R. at 17a.) The Arbitrator issued his decision and award (Award) on August 12, 2015. The Arbitrator concluded that statistical evidence indicated that systematic cheating was occurring while Travis-Curtis was principal at Lamberton. The Arbitrator further concluded that, after the District implemented more stringent testing security measures in 2012, Lamberton students’ test scores dropped significantly, more than could be expected based on other factors such as decreased funding or resources. Additionally, the Arbitrator noted that the analysis showed that cheating occurred in some, but not all, classrooms. The Arbitrator concluded that there was no credible evidence .that Travis-Curtis had knowledge of or participated in the cheating. He determined, however, that Travis-Curtis’ testing .security procedures were insufficient and that she was liable as the top administrator at the school. Accordingly, the Arbitrator found that “the penalty of termination must be mitigated” and reduced the discipline to a 30-day unpaid suspension and a demotion to assistant principal. (Reproduced Record (R.R.) at 58a).'
The District filed in the trial court a petition to vacate the Award, and the Association filed its answer and new matter, seeking confirmation of the Award. Before .the trial court, the District argued that the Award cannot logically flow from the provisions of the CBA and that the Award violates public policy by reinstating, albeit in a lower position, an administrator involved in a cheating scandal. The trial court concluded that the Award was not rationally derived from the CBA because the Arbitrator, made the factual determination that Travis-Curtis committed a terminable offense, ie. neglected her supervisory duties as principal, yet failed to recognize the explicit language of the CBA granting the District “sole discretion” to determine the appropriate level of discipline. (Trial court op. at 4.) By order dated January 15, 2016, the trial court granted the District’s petition and vacated the Arbitrator’s Award. The trial court reasoned that the Arbitrator’s decision was based. on a “just cause” analysis, which was not supported by any provision of the CBA, and that the decision to reinstate Travis-Curtis, even to a íésser position, violated a clear public policy against *932 school administrators condoning cheating. The Association appealed the trial court’s order to this Court.
On appeal, the Association argues that the trial court erred in vacating the Award for three reasons: (1) the trial court invaded the province of the Arbitrator by concluding that he incorrectly applied a “just cause” analysis; (2) the trial court incorrectly concluded that the Arbitrator exceeded his authority by modifying the discipline imposed by the District; and (3) the trial court erred in determining that the Award violated public policy.
Although our Supreme Court has held that an arbitrator’s interpretation of a CBA should be given great deference, the arbitrator’s decision must be rationally derived from the terms of the CBA. Office of the Attorney General v. Council 13, Am. Fed’n of State, Cnty. and Mun. Emps., AFL-CIO, 577 Pa. 257, 844 A.2d 1217, 1222 (2004) (OAG). We have previously explained the “essence test” used to determine whether an arbitrator’s Award is rationally related to the terms of the CBA, as follows:
As stated by the Pennsylvania Supreme Court in Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educational Support Personnel Association, PSEA/NEA, 595 Pa. 648, 939 A.2d 855 (2007), the essence test was derived from the United States Supreme Court’s decision in United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), wherein, the Court held: An arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may, of course, look for guidance from many sources, yet his award is legitimate only so long as it. draws its essence from the collective bargaining agreement.
The Westmoreland Court further explained:
Recently ... we reaffirmed the essence test and set forth a clear two-prong approach to judicial review of grievance arbitration awards: First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator’s award will be upheld if the arbitrator’s interpretation can rationally be derived from the collective bargaining agreement.
Bethel Park Sch. Dist. v. Bethel Park Fed’n of Teachers, Local 1607, 55 A.3d 154, 157 (Pa. Cmwlth. 2012)(internal quotations omitted), appeal denied, 619 Pa. 681, 62 A.3d 380 (2013).[2]
We first address the Association’s argument that the trial court inappropriately intruded upon the domain of the Arbitrator by rejecting his interpretation of “cause” under the CBA. To the extent ’that the trial court held that the *933 Arbitrator erroneously interpreted the definition of “cause” contained in Article 2.1 of the CBA, the trial court clearly erred. It is a foundational principle of arbitration that a court may not substitute its own judgment for that of the arbitrator. See Pa. State Sys. of Higher Educ. v. Ass’n of Pa. State Coll. & Univ. Faculties, 98 A.3d 5 (Pa. Cmwlth. 2014). An arbitrator is charged by the parties with a duty to apply and interpret the contract, including the concept of just cause. See OAG, 844 A.2d at 1217. The trial court’s disagreement with the arbitrator’s interpretation is not alone sufficient to set aside the arbitrator’s interpretation.
The trial court initially determined that the Arbitrator misapplied Section 1122 of the Public School Code of 1949, Act of March 10,1949, P.L. 30, as amended, 24 P.S. § 11-1122, which provides, in pertinent part:
The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employe shall be immorality; incompetency ... intemperance; cruelty; persistent negligence in the performance of duties; willful neglect of duties ... conviction of a felony or acceptance of a guilty plea or nolo contendere therefor; persistent and willful violation of or failure to comply with school laws of this Commonwealth (including official directives and established policy of the board of directors); on the part of the professional employe.
[[Image here]]
The trial court reasoned that, because “cause” is statutorily defined, the Arbitrator was without authority to interpret the definition of cause contrary to the statute. This analysis, however, is precisely the type of analysis disfavored by our Supreme Court in Toth. A court may not look into an arbitrator’s decision and decide whether the arbitrator’s interpretation is reasonable. State Sys. of Higher Educ. (Cheyney Univ.) v. State College Univ. Prof'l Ass’n (PSEA-NEA), 560 Pa. 135, 743 A.2d 405, 413 (1999). The Arbitrator interpreted the term “cause” within the contract to mean “just cause.” The Arbitrator did not equate “cause” under the contract to be a “valid cause for termination” pursuant to Section 1122. The Arbitrator was interpreting a provision of the CBA rather than a statutory provision. Thus, to the extent the trial court held that the Arbitrator misinterpreted the definition of cause in the CBA, the trial court erred by exceeding the scope of its review.
Moreover, we see no conflict in the Arbitrator’s interpretation of the CBA and Section 1122 of the School Code. Section 1122 of the School Code provides that only certain enumerated conduct by a professional employee amounts to “cause[s] for termination.” In other words, Section 1122 of the School Code prescribes the circumstances under which a school district may terminate a professional employee. It does not, however, mandate that a school district terminate any professional employee found to have engaged in such conduct. It also does not preclude a professional employee from grieving a termination decision for one or more of the authorized “causes” identified in Section 1122 of the School Code. The authority of an arbitrator, then, to review a termination decision and to mitigate discipline imposed by a school district is not restricted by Section' 1122 of the School Code. Instead, we must look to the parties’ CBA for any such restrictions on the arbitrator’s authority.
Accordingly, we next address the Association’s argument that the trial court erred in concluding that the Arbitrator exceeded his authority under the CBA when he modified the discipline imposed. The trial court also concluded that the express terms of the CBA preclude the *934 Arbitrator from modifying the discipline assessed by the District. The trial court essentially determined that the Arbitrator’s role was to make the factual determination of whether any cause for discipline exists. If the Arbitrator determined that Travis-Curtis committed any offense subject to discipline, then, under the trial court’s analysis, the District had unfettered discretion to impose any discipline it saw fit. Under this analysis, the penalty imposed is not reviewable by an arbitrator.
We have recently held that, absent a clear limitation in the CBA, it is within an arbitrator’s authority to modify the discipline imposed by a school district: “[The arbitrator also determined [the g]rievant’s conduct did not constitute just cause for her dismissal. In accord with the CBA, it is solely within [the ajrbitrator’s province to find just cause for discipline under the facts of the case. This includes the authority to modify discipline.” Rose Tree Media Secretaries & Educ. Support Pers. Ass’n v. Rose Tree Media Sch. Dist., 136 A.3d 1069, 1080 (Pa. Cmwlth. 2016) (internal citations omitted); see also Blue Mountain Sch. Dist. v. Soister, 758 A.2d 742 (Pa. Cmwlth. 2000) (holding that, even under manifestly unreasonable standard, arbitrator’s interpretation of “just cause” can include modification of discipline if arbitrator concluded that penalty imposed was excessive). In Rose Tree, this Court applied the two-pronged essence test, set forth above, to determine whether an arbitrator’s modification of the discipline imposed by a school district was rationally derived from the CBA. The parties in Rose Tree stipulated that the arbitrator had authority to decide the issue before him, and, thus, the first prong of the essence test was met. This Court examined the relevant language contained in the parties’ CBA, which provided, in pertinent part:
[Employer] and the Association expressly agree that the Board and the Administration shall have the right to discipline an employee for cause. Disciplinary actions which the Board or Administration may take, provided that cause exists, shall include, but,not be limited to, oral reprimand, written warning, written reprimand, unsatisfactory rating or dismissal for cause.
Rose Tree, 136 A.3d at 1076. Based on this language, we held that the CBA did not limit the arbitrator’s authority to determine whether just cause existed and to modify the discipline imposed by the school district.
We have previously distinguished between a provision of a CBA which allows an arbitrator to review and modify a district’s disciplinary ruling and a provision that expressly reserves for the employer the right to decide the appropriate form of discipline:
An arbitrator generally has the power, and specifically under this Agreement, to interpret its provisions ... and we will not reverse unless the interpretation of the agreement fails to draw itself from the essence of the agreement. Regarding whether arbitrators have correctly decided that they had the power to modify discipline imposed by the employer under the Agreement, we have held that where the agreement does not specifically define or designate the discipline to be imposed, and does not specifically state that the employer is the one with sole discretion to determine the discipline, the arbitrator is within his or her authority in construing the agreement to modify the discipline imposed to reflect a reasonable interpretation of the agreement.
Abington Sch. Dist. v. Abington Sch. Serv. Pers. Ass’n/AFSCME, 744 A.2d 367, 369 (Pa. Cmwlth. 2000). In Abington, we concluded that the language in the CBA must *935 be specific to reserve the authority to impose discipline to the school district in contrast to language generally reserving authority to a district.[3]
We now address whether the Arbitrator’s interpretation of the CBA as allowing the Arbitrator to modify the discipline imposed was rationally derived from the CBA or whether the CBA clearly reserved to the District the right to determine the appropriate discipline.[4] The relevant provisions of the CBA are as follows. Article 2.1 of the CBA provides that that the District “shall retain the sole right to hire, discipline or discharge for cause, lay off, transfer and assign Administrators.” (R.R. at 22a.) Article 2.3 provides that the CBA “is not intended to modify by any of its terms any discretionary authority concerning such matters vested in the [District] by the statutes of the Commonwealth or the Philadelphia Home Rule Charter, as the same may be supplemented or amended from time to time,” (R.R. at 23a.) Article 10.6 of fite CBA, which relates to personnel practices, provides that “[a]dministrators may be disciplined for cause at the discretion of the [District]. Discipline shall include discharge, suspension, demotion in salary or status or any other action disciplinary in nature.” (R.R. at 45a.) Article 5.5(2) of the CBA provides that:
The Arbitrator shall have the power and authority to decide and shall limit his/ her decision strictly to the matter specified in the Notice of Arbitration. The Arbitrator shall be without power or authority to make any decision that is:
(1) Contrary to or inconsistent with, or which modifies or varies in any way, the terms of this Agreement or of applicable law or rules or regulations having the force and effect of law; or
(2) Which limits or interferes in any way with the power, duties, responsibilities and discretion of the Board and/or [School Reform Commission (SRC) ] un *936 der its By-Laws, applicable law, or rules and regulations having the force and effect of law.
(R.R. at 29a.)
The District asserts that these Articles, read in conjunction, are intended to reserve the authority to decide appropriate discipline to the District. Although the District has asserted colorable arguments as to how certain provisions of the CBA could be interpreted to limit an arbitrator’s authority, the Arbitrator interpreted the provisions to allow him to modify the discipline imposed by the District, and no provision of the CBA expressly precludes the Arbitrator from modifying the discipline imposed by the District. The essence test does not allow a reviewing court to decide de novo whether an arbitrator correctly interpreted his or her authority under the CBA. State Sys. of Higher Educ. (Cheyney Univ.), 743 A.2d at 413. Instead, we need only determine whether the arbitrator’s authority is rationally derived from the CBA. Bethel Park Sch. Dist., 55 A.3d at 157. Presumably, the Arbitrator determined that his authority derived from Article 5.5 of the CBA, which authorizes the Arbitrator to decide issues placed before him by the parties through the Notice of Arbitration unless otherwise limited by the CBA, statutes, or regulations. In this instance, the parties presented the Arbitrator with the following questions: “Was [Travis-Curtis] terminated for just cause? If not, what shall the remedy be?” (R.R. at 17a.) As explained above, our prior precedent has established that the authority to modify discipline is inherent in an arbitrator’s authority to determine whether just cause for discipline exists, unless the authority to modify discipline is expressly reserved to the District. See Rose Tree, 136 A.3d at 1080. The Arbitrator concluded that no provision of the CBA statute, or regulation expressly limited his authority to modify the discipline imposed by the District. Accordingly, the Arbitrator determined that “the penalty of termination must be mitigated.” (R.R. at 58a.)
In the context of a school district arguing that a provision of the CBA excluded a particular class of violations from arbitration, we held:
Clearly, the best evidence that parties to a public employment collective bargaining agreement intended not to arbitrate a particular class of disputes is-an express provision in the agreement excluding these questions from the arbitration process. Where, as here, the collective bargaining agreement contains no such limiting provision, to subject a unionized employee to arbitrary discipline resulting in a loss of employee rights and protections afforded by the agreement, without recourse to protest the employer’s action, would render the agreement a mere sham and run counter to PERA’s[5] objective to provide for mutual fair dealing by the parties with regard to employment issues.
Hanover Sch. Dist. v. Hanover Educ. Ass’n, 814 A.2d 292, 297 (Pa. Cmwlth.), aff'd, 576 Pa. 227, 839 A.2d 183 (2003) (per curiam). Thus, we decline to conclude that a provision limits the Arbitrator’s authority where the provision purported to do so is vague rather than express.
With regard to the Association’s first two arguments, based on the language of the CBA, we conclude that the Award was “not ‘indisputably and generally [ ] without foundation in’ the CBA, and it appears to ‘logically flow from’ the CBA.” Pennsylva *937 nia Turnpike Comm’n v. Teamsters Local Union No. 77, 87 A.3d 904, 911 (Pa. Cmwlth. 2014) (quoting Slippery Rock Univ. of Pa., Pa. State Sys. of Higher Educ. v. Ass’n of Pa. State Coll. and Univ. Faculty, 71 A.3d 353, 358 (Pa. Cmwlth.), appeal denied, 623 Pa. 758, 83 A.3d 169 (2013)). Accordingly, the trial court erred in concluding that the Arbitrator’s Award did not draw its essence from the CBA.
Because the trial court also concluded that, even if the Arbitrator’s Award did draw its essence from the CBA, the Award should still be vacated because it contravened a public policy of the Commonwealth, we now address the Association’s argument that the trial court erred in determining that the Arbitrator’s Award fell within the public policy exception to the essence test. The public policy exception is a narrow exception, prohibiting a court from enforcing an arbitrator’s award that contravenes public policy. See Westmoreland, 939 A.2d at 855. As explained by our Supreme Court, “a court should not enforce a grievance arbitration award that contravenes public policy. Such public policy, however, must be well-defined, dominant, and ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.” Id. at 865-66. In City of Bradford v. Teamsters Local Union No. 110, 25 A.3d 408 (Pa. Cmwlth.) (en banc), appeal denied, 613 Pa. 647, 32 A.3d 1279 (2011), we set forth a three-step analysis to be used when considering whether an award violates public policy:
First, the nature of the conduct leading to the discipline must be identified. Second, we must determine if that conduct implicates a public policy which is well-defined, dominant, and ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. Third, we must determine if the Arbitrator’s award poses an unacceptable risk that it will undermine the implicated policy and cause the public employer to breach its lawful obligations or public duty, given the particular circumstances at hand and the factual findings of the Arbitrator.
City of Bradford, 25 A.3d at 414.
We must first determine the nature of the conduct leading to the discipline. Here, the trial.court concluded that “it is fundamental that plagiarism and cheating are antithetical to learning and education and thus contrary to established policy.” (Trial court op. at 7.) The Association argues that the Arbitrator found that Travis-Curtis had merely failed to properly supervise the security of the PSSA administration and did not engage in conduct that constituted plagiarism or cheating.
We agree that the trial court mischarac-terized the Arbitrator’s factual findings when analyzing the public policy exception to the essence test. The trial court also stated: ‘Where, as here, there is no disagreement that school administration, if not the principal herself, have been implicated in changing students’ answers on a standardized test over a two year period ... public policy is offended.” (Trial court op. at 7 (emphasis in original).) The Arbitrator unequivocally found that the District did not demonstrate that Travis-Curtis was directly involved in changing or altering any PSSA answers. The Arbitrator found only that she was negligent in failing to discover the cheating that was occurring. Thus, our inquiry is limited to whether reinstatement and demotion of an administrator found to be negligent in the supervision of school employees and other administrators contravenes a well-defined, dominant, and readily-ascertainable public policy.
*938 It is well-settled that we may not vacate an arbitrator’s award under the public policy exception simply because the conduct at issue is unacceptable in a public employment setting. City of Bradford, 25 A.3d at 415. “There is no public policy that mandates the discharge of all employees who are alleged to have committed a misconduct.” County of Mercer v. Teamsters Local 250, 946 A.2d 174, 183 (Pa. Cmwlth. 2008). Prior case law has recognized areas where a dominant public policy would preclude the enforcement of an arbitrator’s award. Westmoreland Intermediate Unit No. 7 v. Westmoreland Intermediate Unit No. 7 Classroom Assistants Educ. Support Pers. Ass’n, PSEA-NEA 977 A.2d 1205, 1211-12 (Pa. Cmwlth. 2009) (recognizing “a well-defined, dominant public policy to protect school children from illegal drugs and drug use”); cf. New Kensington-Arnold Sch. Dist. v. New Kensington-Arnold Educ. Ass’n., 140 A.3d 726 (Pa. Cmwlth. 2016) (holding that teacher’s conviction for possession of marijuana off-premises and during non-working hours did not require vacatur of arbitration award reinstating teacher.); see also Philadelphia Housing Auth. v. Am. Fed’n of State, Cnty. and Mun. Emps., Dist. Council 33, Local 934, 617 Pa. 69, 52 A.3d 1117 (2012) (holding that arbitration award reinstating employee discharged for acts constituting sexual harassment, violated well-defined and dominant public policy); North Penn Sch. Dist. v. North Penn Educ. Ass’n, 58 A.3d 848, 858 (Pa. Cmwlth. 2012) (“[An award] under the public policy analysis [must draw] the necessary balance between the public employer’s duty to protect the health, safety and welfare of the public, and the fair treatment of public employees”); Shamokin Area Sch. Dist. v. Am. Fed’n of State, Cnty. & Mun. Emps. Dist. Council 86, 20 A.3d 579 (Pa. Cmwlth. 2011) (recognizing public policy against violence towards students in schools).[6]
The District asserts that Travis-Curtis’ actions violate a well-defined public policy to protect students and public education and to preserve the integrity of the PSSA testing. The District requests that this Court recognize a broad public policy to protect students and public education. Although the overarching goal of our school system is to provide a thorough and efficient educational environment for children in the Commonwealth, the District’s vague characterization of this policy would necessarily implicate any conduct occurring in a school setting, thus eviscerating the narrow public policy exception to the essence test. See Philadelphia Housing Auth., 52 A.3d at 1125 (emphasizing that public policy exception is exceptionally narrow and particularized).
We do, however, recognize that a fundamental public policy exists to “preserve the integrity of the PSSA testing,” in order to provide students in the Commonwealth with an effective learning environment, and, had the Arbitrator found Travis-Curtis to be guilty of actively participating in altering PSSA tests, we would have no hesitation in affirming the trial court’s conclusion that such conduct offends a well-defined and dominant public policy of the Commonwealth; however, this is not the case. Instead, the Arbitrator found only that Travis-Curtis was negligent in her supervisory responsibilities and in exercising oversight over PSSA test security. In other words, the Arbitrator essentially found that Travis-Curtis engaged in negligent supervision.
*939 We are constrained by the factual findings of the Arbitrator on appeal and, thus, must decide whether an award reinstating Travis-Curtis, despite finding that she was negligent, violates a fundamental public policy. This Court has not previously recognized a public policy exception that would prevent an administrator from being reinstated based on mere negligence, and we decline to recognize one based on the facts of this case. Although the cheating which occurred at Lamberton is abhorrent and such conduct must be rooted out, the Arbitrator found only that Travis-Curtis failed to uncover the cheating and prevent it. Thus, we cannot conclude an award reinstating an administrator after finding her guilty of mere negligence violates a fundamental public policy. For the reasons set forth above, the trial court erred in concluding that the Arbitrator’s Award was contrary to public policy and that the Award should be vacated.[7]
Accordingly, the order of the trial court is reversed.
ORDER
AND NOW, this 25th day of April, 2017, the order of the Court of Common Pleas of Philadelphia County (trial court), granting the School District of Philadelphia’s petition to vacate the arbitration award, is REVERSED.

. From this point forward, this opinion will refer to Lamberton Elementary School as " Lamberton.”

. We note that the District cites our decision in Riverview School District v. Riverview Education Association, 162 Pa.Cmwlth. 644, 639 A.2d 974, 977 (1994), appeal denied, 540 Pa. 588, 655 A.2d 518 (1995), for the proposition that a court may vacate an arbitrator's award if the court determines that the award was "manifestly unreasonable.” Riverview Sch. Dist., 639 A.2d at 977. Our Supreme Court, however, has expressly stated that the essence test does not allow a court to evaluate the reasonableness of an award. Pennsylvania Game Comm'n v. State Civil Service Comm'n (Toth), 561 Pa. 19, 747 A.2d 887, 891 n.7 (2000) (Toth) ("Thus, we reiterate that the essence test does not permit an appellate court to intrude into the domain of the arbitrator and determine whether an award is manifestly unreasonable.”); Westmoreland, 939 A.2d at 863.

. The Court in Abington found that, for the discipline imposed not to be subject to arbitration, the language must be similar to that in Board of Education of the School District of Philadelphia v. Philadelphia Federation of Teachers, AFL-CIO, 147 Pa.Cmwlth. 15, 610 A.2d 506 (1992) (Philadelphia Federation), which provided "the arbitrator shall have no power or authority to make any decision contrary to or inconsistent with terms of the agreement or applicable law or which limits or interferes with the powers and responsibility of the [djistrict.” Philadelphia Fed’n, 610 A.2d at 508. This Court reached a similar holding in Riverview, wherein we held that the reference to Section 1122 of the School Code, which provides, in part that "[t]he [school district] ... shall ... have the right at any time to remove any of its officers, employes, or appointees for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct,” was sufficient to reserve discretion to decide the appropriate discipline to the school district. A review of Philadelphia Federation and Riverview, however, reveals that both cases based their conclusions on a "manifestly unreasonable” analysis. See Riverview, 639 A.2d at 978-79 (holding "it is therefore manifestly unreasonable to conclude that the School- District could have intended to bargain away its absolute responsibility to insure the integrity of its educational mission by discharging an employee who commits improper conduct.”) Accordingly, our analysis may be informed by our prior holdings in Riverview and Philadelphia Federation to the extent those decisions analyzed whether the language in the CBA clearly reserved the discretion to determine the appropriate discipline to the District. Because the standard of review applied by those decisions has been disfavored, however, we are not bound by their conclusions.

. We note that the trial court did not specifically address the issue of whether the Arbitrator had authority to reinstate Travis-Curtis to a different position than the one she held when her employment was terminated. The District does not raise this issue on appeal, and, accordingly, we express no opinion as to whether the Arbitrator had this authority under the CBA.

. Public Employe Relations Act, Act of July 23, 1970, P.L. 563, as amended, 43 P.S. §§ 1101.101-.2301.

. We have previously held that an arbitrator’s award which divests an educational institution of its authority to make employment decisions does not, by itself, violate any well-defined, dominant public policy. East Stroudsburg Univ. of Pa., State Sys. of Higher Educ. v. Ass’n of Pa. State Coll. and Univ. Faculties, 125 A.3d 870, 874 (Pa. Cmwlth. 2015).

. Because we conclude that the Arbitrator’s Award does not meet the second prong of the public policy exception, we need not analyze the Award under the third prong. See City of Bradford, 25 A.3d at 415.