IN THE COMMONWEALTH COURT OF PENNSYLVANIA

North Allegheny School District, :
                Appellant :
 :
     v. : No. 1379 C.D. 2019
 : ARGUED: October 13, 2020
North Allegheny Federation of :
Teachers, Local 2097, American :
Federation of Teachers, AFL-CIO :
(Federation) :

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                      FILED: November 9, 2020

North Allegheny School District (School District) appeals from the August 29, 2019 Order of the Court of Common Pleas of Allegheny County (Trial Court) dismissing School District's Petition to Vacate Arbitration Award (Petition to Vacate) and confirming the April 1, 2019 arbitration award (Award) issued by Jane Desimone, Esquire (Arbitrator). In her Award, the Arbitrator sustained in part a grievance filed by the North Allegheny Federation of Teachers, Local 2097, American Federation of Teachers, AFL-CIO (Union), on behalf of Paul Seneca. For the reasons that follow, we affirm the Trial Court's Order.

## Background

Mr. Seneca has taught elementary school physical education for 43 years and has worked for School District for 22 years. During his 22-year employment with School District, Mr. Seneca received satisfactory performance ratings each year through the 2016-2017 school year. Most recently, Mr. Seneca was a physical

education teacher at School District's Hosack Elementary School during the 2017-2018 school year.

On January 29, 2018, School District issued a Plan of Improvement (POI) to Mr. Seneca, stemming from an incident in which one of his students was injured during gym class in January 2018.[1]  The POI stated:

> You are being placed on a [POI] due to unsatisfactory performances as specified in the deficiencies identified below.  This plan is designed to help you correct those deficiencies.  Upon successful completion of this plan, you will be returned to the general directed supervision track of evaluation.  If this plan is not successfully completed according to the timetable designated by the administrative team, further disciplinary action may be initiated.

Reproduced Record (R.R.) at 118.  The POI identified the following deficiencies in Mr. Seneca's job performance:

> Inadequate classroom procedures and poor classroom management have resulted in a classroom environment where no standards of conduct were evident.  *A pattern of insufficient supervision has led to an unsafe classroom environment resulting in a recent situation where a student received a serious injury, and the student leaving the classroom without the instructor's knowledge.*  Finally, a lack of clear

---

[1] The Arbitrator described the January 2018 incident as follows:

[O]n January 10, 2018, [a] student was seriously injured in [Mr. Seneca's] classroom, with a bloody nose and a concussion.  The student went to the nurse's office without [Mr. Seneca] being aware of what had occurred. . . . [A]s a result of this incident, [Mr. Seneca] received a one-day suspension and was placed on the POI.  The one-day suspension was issued without a *Loudermill* hearing and was . . . thereafter rescinded.

Arbitrator Decision, 4/1/19, at 7.  "A *Loudermill* hearing is a pre-termination hearing given to a public employee that is required by due process, as established in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532[] . . . (1985)."  *Ray v. Brookville Area Sch. Dist.*, 19 A.3d 29, 31 n.2 (Pa. Cmwlth. 2011).

2

learning goals as to content and student behavior expectations have created an environment where students spend a significant amount of time off-task.

*Id.* (emphasis added). The POI stated that School District would conduct periodic observations of Mr. Seneca's classroom and would hold a formal mid-point meeting with Mr. Seneca on March 22, 2018 and a final summary meeting on May 22, 2018.

School District officials conducted four observations of Mr. Seneca's classroom between February 26, 2018 and May 24, 2018 in accordance with the POI. On May 21, 2018, Union Representative Marcia Casey sent an email to Amanda Mathieson, Principal of Hosack Elementary School, stating that she could not attend the final summary meeting scheduled for the next day due to a scheduling conflict. Mr. Seneca completed his required 18 hours of online training by May 5, 2018, but he did not submit all of the required self-assessment paperwork until the evening of May 21, 2018.

On June 1, 2018, School District suspended Mr. Seneca without pay following two incidents that occurred during his gym classes on May 22, 2018 and May 24, 2018. On June 4, 2018, School District issued a Notice of *Loudermill* Hearing (*Loudermill* Notice) and a Statement of Charges to Mr. Seneca. In its Statement of Charges, School District alleged that Mr. Seneca engaged in the following misconduct:

- You were warned and had knowledge of [S]chool [D]istrict's performance expectations[,] in particular its requirements for planned supervision of students, an[d] ethical execution of your professional responsibilities, and have failed to meet them.

- A [POI] dated January 29, 2018 identifies your deficiencies as: inadequate classroom procedures; poor classroom management; insufficient supervision resulting in an unsafe classroom environment; an unsafe environment which resulted in a student

3

receiving a serious injury and the student leaving your classroom to receive medical care without your knowledge; and an environment where students spend a significant amount of time off-task.

- You acknowledged that the [POI] dated January 29, 2018 was to address supervision, safe environment, monitoring student activity and keeping students on task.

- [Ms.] Mathieson[] . . . observed your classroom on May 22, [2018] during the 11:30-12:15 pm class period. During this time period, you were observed sitting and otherwise unengaged with your students. Once you noticed [Ms.] Mathieson's entry into your classroom you immediately jumped up from your seated position and began to engage with your students. [Ms.] Mathieson observed you on your personal electronic device for an extended period of time and not providing active supervision to your students.

- [School] District received reports that a third[-]grade female student was found locked outside of the Hosack Elementary [School] [b]uilding during her scheduled class period with you. It was reported by a staff person that on May 24, 2018 between the hours of 2:45 and 3:00 pm a third grade student assigned to your classroom was found outside behind the building standing unsupervised. The student reported to the staff member that you sent her to go outside to clean up gym equipment and to bring the equipment inside. As the student was locked out of the building, the staff member let her back in and told her to return to your classroom. Thereafter, you sent the same student outside the school building along with other students unsupervised.

- You failed to report the student's extended absence from your classroom to the [school a]dministration and you did not believe it was necessary as it was not a priority or serious matter.

- [Ms.] Mathieson[] . . . provided you written notice of your deficiencies and continued lack of supervision on May 29, 2018[.]

4

- You were aware and knew of [S]chool [D]istrict's policies regarding student safety and deliberately chose to ignore them[.]

- You were informed that the conduct of sitting off to the side and failing to engage with your students was unacceptable[.]

- Your repetitive acts and omissions regarding the lack of supervision of your students was clearly exhibited in the video reviewed with you and [Union] representatives on June 7, 2018. The video identifies students repetitively exiting your classroom presumably to get a drink from the water fountain; another group of students exited the classroom after having received a set of keys from you and returned approximately ten minutes later; you are observed on your phone for an approximate period of twenty-five minutes and not supervising your students; and later observed sitting off to the side of the gym on a stool and not until [Ms.] Mathieson's entrance are you observed supervising the students' game of kickball.

- Your explanation that you did not jump to attention when caught by [Ms.] Mathieson was negated by the video. Additionally, your explanations for viewing your phone to review and set-up stations as well as the need for students to collect equipment were negated by the fact that prior to the class you have a [15-]minute window of time for set-up of the obstacle course as well as two successive plan periods prior to the 11:30-12:15 pm class period.

- You failed to exert reasonable effort to protect your students from conditions which interfere with learning or are harmful to the student's health and safety.

R.R. at 101-03.

Based on these allegations, School District charged Mr. Seneca with, *inter alia*: immorality; persistent negligence in the performance of duties; persistent and willful neglect of duties; persistent and willful violations of the school laws of the Commonwealth; and incompetence under Section 1122(a) of the Public School Code

5

of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 11-1122(a).[2]  *Id.* at 103.

Following the *Loudermill* hearing, School District's Superintendent concluded that there were sufficient grounds to support "the allegations of [Mr. Seneca's violation of] the Code of Conduct for Professional Educators, incompetency, negligence, persistent negligence in the performance of duties, willful neglect of duties and/or persistent and willful violations of[,] or failure to comply with[,] the school laws of the Commonwealth, as set forth in the School Code."  R.R. at 96.  Thus, School District suspended Mr. Seneca without pay effective June 8, 2018.  Following a public school board meeting, School District approved Mr. Seneca's dismissal on August 6, 2018.  R.R. at 98.

On June 11, 2018, the Union filed a grievance report with School District on behalf of Mr. Seneca in accordance with the parties' collective bargaining agreement (CBA).[3]  The Union averred that Mr. Seneca "was unjustly suspended without pay"

---

[2] Section 1122(a) of the School Code states in relevant part:

*The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employe shall be* immorality; incompetency; unsatisfactory teaching performance based on two (2) consecutive ratings of the employe's teaching performance that are to include classroom observations, not less than four (4) months apart, in which the employe's teaching performance is rated as unsatisfactory; . . . persistent negligence in the performance of duties; wilful neglect of duties; . . . [and] persistent and wilful violation of or failure to comply with school laws of this Commonwealth, including official directives and established policy of the board of directors[] on the part of the professional employe . . . .

24 P.S. § 11-1122(a) (emphasis added).

[3] The CBA between School District and the Union was in effect from July 1, 2015 through June 30, 2020.  The CBA provided that, for a professional employee, such as Mr. Seneca, "[s]eniority shall be broken and employment terminated for . . . [d]ischarge in conformance with [the] School Code."  R.R. at 40; *see* Arbitrator Decision, 4/1/19, at 2.

6

and requested that he "be made whole, including recall to his job and full back pay for all lost wages and benefits."  R.R. at 104.

Pursuant to the CBA, the grievance matter proceeded to arbitration and was assigned to the Arbitrator on August 24, 2018.

### 1. Arbitration Proceedings

The Arbitrator held evidentiary hearings on October 15, 2018 and November 16, 2018.  At the outset of the proceedings, the parties stipulated that the principle of just cause is implied in the CBA and that the issue to be determined by the Arbitrator was whether School District had just cause to discharge Mr. Seneca. Arbitrator Decision, 4/1/19, at 1, 13; Trial Ct. Op., 12/12/19, at 7.

Following the hearings, the parties requested additional time to submit post-hearing briefs.  The Arbitrator received the parties' post-hearing briefs on January 14, 2019, at which time she closed the record.

The Arbitrator issued her Decision and Award on April 1, 2019.  Based on her review of the Statement of Charges, the Arbitrator determined that School District dismissed Mr. Seneca for:  (1) two separate incidents of misconduct – one on May 22, 2018 involving his fifth grade class, and one on May 24, 2018 involving a third grade student; and (2) failing to complete the requirements of the January 29, 2018 POI.  Arbitrator Decision, 4/1/19, at 13-14.[4]  The Arbitrator made the following findings regarding each charge.

---

[4] In her decision, the Arbitrator also explained her evidentiary ruling, made during the hearings, regarding earlier alleged incidents of negligent supervision as follows:

> In addition to the conduct described in the Statement of Charges, the School District referenced events involving [Mr. Seneca] that occurred in 2014, 2015 and January of 2018.  These events were raised at arbitration as evidence of [his] persistent and repetitive pattern of misconduct involving his lack of sufficient supervision of his

**(Footnote continued on next page…)**

7

## A. May 22, 2018 Incident

On May 22, 2018, Mr. Seneca initially planned to conduct his fifth grade gym class outside, but he moved the class indoors due to the heat and humidity. *Id.* at 15. Mr. Seneca's students were playing a game in the gymnasium called "500," which involved hitting softballs with bats and running bases. *Id.* Mr. Seneca was present during the game and used his cell phone for about 25 minutes. *Id.* Ms. Mathieson observed the class after the game had already started, and a security camera captured the entire class period. The video footage was admitted into evidence. *Id.* at 15 n.2.

Based on Ms. Mathieson's observations and the video footage, School District found that Mr. Seneca failed to adequately supervise his students and failed to engage with his students by being on his cell phone, and that the game was unstructured and chaotic. Arbitrator Decision, 4/1/19, at 15. Mr. Seneca, however, testified that he was using his cell phone during class to access teaching materials because his school iPad was not charged. *Id.* He also testified that he positioned his seat so that he could keep an eye on the students and that any students who left the gym did so with his permission, to either retrieve equipment or use the restroom or water fountain. *Id.*

---

classroom and students. *[School] District's attempt to submit camera footage of these events was objected to by the [Union]. This objection was sustained, with the evidence ruled inadmissible because the earlier events were not cited in the Statement of Charges and [some of the events took place] up to four years prior [to Mr. Seneca's discharge].* While reference and testimony as to the prior matters were deemed *admissible as evidence of [Mr. Seneca's] knowledge of [School] District's performance expectations*, it was deemed unfair to require [Mr. Seneca] to defend against old incidents at such a late time.

Arbitrator Decision, 4/1/1/9, at 14 (emphasis added).

The Arbitrator found Mr. Seneca's testimony credible and consistent with both the video footage and Ms. Mathieson's observations. *Id.* at 16. The Arbitrator concluded:

> Contrary to the assertions of the School District, *there is no indication that [Mr. Seneca] willfully neglected his duties. While [Ms.] Mathieson may have had grounds to question how [Mr. Seneca] ran the class, none of the conduct either described or captured on camera footage came close to the alleged level of willful neglect, negligence of duty, incompetence, immorality or other unethical behavior. Likewise, there is no indication that [Mr. Seneca] abused his authority as a teacher.* As the evidence does not support these allegations, the charges as they relate to [Mr. Seneca's] actions on May 22, 2018 are unfounded.

*Id.* (emphasis added).

## B. May 24, 2018 Incident

On May 24, 2018, Mr. Seneca initially planned to conduct his third grade gym class outside, but he moved it indoors due to the heat and humidity. *Id.* Mr. Seneca directed a female student to retrieve equipment to be used in the gym. *Id.* The student understood this to be a directive to retrieve equipment from outside. *Id.* After going outside, the student was unable to get back inside the building and was locked out for approximately 20 minutes. *Id.* The student was eventually seen by three paraprofessionals, who let her back into the building. *Id.* The student then returned to the gym and went with a group of students to retrieve the equipment. *Id.* While Mr. Seneca asked the student why she went outside, he did not report the incident to the school's administration. *Id.*

Mr. Seneca explained that he never directed the student to go outside, but only to retrieve equipment that was kept inside by the doors to the outside of the building. *Id.* Mr. Seneca believed that the incident was a "simple misunderstanding." *Id.* Mr.

Seneca testified that he did not report the incident to the school administration because no student was injured. *Id.*

The Arbitrator credited Mr. Seneca's testimony that the incident resulted from a misunderstanding. However, the Arbitrator nonetheless determined that Mr. Seneca's conduct was negligent:

> [T]he fact that [Mr. Seneca] did not direct the student to go outside does not alter the fact that *he was unaware of the whereabouts of one of his young students for more than twenty minutes.* Indeed, it is unclear why [Mr. Seneca] did not notice that she had not returned with [the] necessary equipment for a large portion of the scheduled class period. While fortunately nothing happened to the student while she was outside and unaccounted for, *[Mr. Seneca's] inattentiveness could have resulted in either physical or psychological injury to her. As a professional teacher, [Mr. Seneca] is charged with the safety of all of the students in his class. At a most basic level, this requires him to know their whereabouts. [Mr. Seneca's] failure to meet this responsibility placed the student in harm's way on May 24, 2018.*

*Id.* at 17 (emphasis added).

As a result of these findings, the Arbitrator concluded:

> [Mr. Seneca's] conduct was not willful, immoral, or an abuse of his professional authority. Rather, *it constituted a neglect of his basic duty to keep his students accounted for and safe. By directing the student to retrieve equipment and then not noticing when the student did not return to class after an extended period of time, [Mr. Seneca] failed in his basic obligations as a teacher.* To allow this level of inattentiveness to continue without correction would be complicit in [Mr. Seneca's] inattentiveness, thereby rendering [School] District negligent as well. It is therefore concluded that *the charges against [Mr. Seneca] as they relate to his negligence on May 24, 2018 are supported by the record and [he] acted as charged in this regard.*

*Id.* (emphasis added).

## C. Failure to Complete the POI

Finally, with regard to Mr. Seneca's failure to complete the requirements of the January 29, 2018 POI, the Arbitrator determined:

> *As of May 21, 2018, [Mr. Seneca] had completed all of the requirements of the POI, with only the final summary meeting to be held. Throughout this process, [Mr. Seneca's] willingness to cooperate and learn better teaching techniques was documented by the School District.* This documentation provides evidence both that [Mr. Seneca] was fully aware of his deficiency and his attempts to address the problem. His failure to keep track of a student on May 24, 2018 further demonstrates that he needs to do better [and that] his continued lack of supervision cannot be tolerated.

*Id.* at 18 (emphasis added).[5]

The Arbitrator ultimately concluded that "School District met its burden of proving a portion[,] but not all[,] of the charges against" Mr. Seneca, as follows:

> [I]t is apparent that *the Statement of Charges is overbroad, with alleged misconduct far beyond [Mr. Seneca's] actions and culpability. There is no evidence to support the charge[s] of immorality, unethical behavior, abuse of authority, or even willful neglect of duties.* These heightened allegations implying moral turpitude do not describe [Mr. Seneca's] behavior, but rather, result in an avoidance of the heart of his conduct by eliciting an emotional response of denial. *[Mr. Seneca's] misconduct is limited to his inattentiveness with regard to a 3rd Grade student on May 24, 2018, when he failed to notice that she was absent from his class for an extended period of time. While this conduct did*

[5] In its Opinion, the Trial Court further noted:

[Ms.] Mathieson's own e-mail supports the fact that [Mr. Seneca] was only one meeting away from completion [of the POI] and the meeting was postponed[] only [due] to the unavailability of the Union Representative. *[Ms.] Mathieson commented in the e-mail that all had gone well otherwise and [she] looked forward to the meeting.*

Trial Ct. Op., 12/12/19, at 3 (emphasis added); *see* R.R. at 344-45.

*not rise to the full scope of [School] District's allegations, it nevertheless constituted an unacceptable neglect of duties that required a disciplinary response.*

*Id.* at 17-18 (emphasis added). The Arbitrator further noted Mr. Seneca's lengthy teaching career and tenure with School District and concluded that "[w]hen [Mr. Seneca's] negligent actions on May 24, 2018 are considered in conjunction with this extended record, . . . his discharge was unduly harsh and not consistent with the gravity of his conduct." *Id.* at 18.

Therefore, the Arbitrator reduced Mr. Seneca's discharge to a three-day suspension and directed that he "be returned to work, taking into account this suspension, and made whole for all resulting lost wages and benefits and with full seniority." *Id.*

## 2. Trial Court Proceedings

On April 30, 2019, School District appealed to the Trial Court by filing the Petition to Vacate. On May 15, 2019, the Union filed an Answer. On August 29, 2019, the Trial Court issued an Order dismissing the Petition to Vacate and confirming the Arbitrator's Award.

In its subsequent Pa. R.A.P. 1925(a) Opinion, the Trial Court determined that the Award satisfied the first prong of the essence test because "[t]he parties stipulated that the [CBA] contains an Implied Just Cause provision and that the matter both parties presented to [the] Arbitrator . . . was whether [School] District has just cause to discharge [Mr.] Seneca." Trial Ct. Op., 12/12/19, at 7 (emphasis removed). The Trial Court also found that the Arbitrator's decision was rationally derived from the CBA because the Award was "precisely based upon the applicable standard stipulated by both parties and incorporated into the [CBA] by case law." *Id.* at 7-8.

12

The Trial Court agreed with the Arbitrator that School District's Statement of Charges was overbroad, finding that "[School] District had absolutely no basis or any explanation for charging [Mr. Seneca] with actions that can only be described as exhibiting moral turpitude, such as immorality, intemperance and willful misconduct, when *only one day prior to the May [22, 2018] incident, [Ms. Mathieson] acknowledged the fact that [Mr. Seneca] was doing well and had completed his end of the voluntary requirements for the POI*." *Id.* at 8 (emphasis added).

The Trial Court also concluded that School District did not establish that the Award violated public policy, stating:

> The Arbitrator specifically found that no laws were violated, and those findings are not grounds for an appeal. Just because [School District] does not agree that the Arbitrator determined that all but one of the charges were unfounded, does not meet the narrow exception to its requirement that it cite[] only public policies which are well defined, dominant, and ascertained by reference to laws and legal precedents that could have been violated by the arbitrator's award. The Arbitrator's Award is consistent with accepted public policy.

*Id.* at 9. School District now appeals from that decision.

## Standard and Scope of Review

Our standard of review of a grievance arbitration award "is one of deference to the arbitrator's award" and our scope of review is the essence test. *Slippery Rock Univ. of Pa. of State Sys. of Higher Educ. v. Ass'n of Pa. State Coll. & Univ. Faculties*, 916 A.2d 736, 740 n.3 (Pa. Cmwlth. 2007).

The essence test requires a reviewing court to affirm an arbitration award so long as it draws its essence from the applicable CBA. *Pa. State Sys. of Higher Educ., Lock Haven Univ. v. Ass'n of Pa. State Coll. & Univ. Faculties*, 193 A.3d 486, 494

(Pa. Cmwlth. 2018), *appeal denied*, 203 A.3d 980 (Pa. 2019). The essence test is comprised of two prongs. The court must determine: (1) whether the issue is properly defined within the terms of the CBA; and (2) whether the arbitration award is rationally derived from the CBA. *Id.* "[A] court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the" CBA. *Westmoreland Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educ. Support Pers. Ass'n, PSEA/NEA*, 939 A.2d 855, 863 (Pa. 2007).

Under the essence test, the arbitrator's findings of fact are binding, and the reviewing court may not conduct any independent factual analysis. *Pa. State Sys.*, 193 A.3d at 495. In addition, the court may not review the merits or reasonableness of the arbitrator's award under the guise of the essence test. *Id.*

## Analysis

### 1. Essence Test

First, School District argues that the Arbitrator's Award fails to draw its essence from the parties' CBA and is not a rational interpretation of the CBA. Specifically, School District contends that the Award contravenes School District's clear right to terminate professional employees for "persistent negligence in the performance of duties" under Section 1122(a) of the School Code. School District claims that it discharged Mr. Seneca not for the final two incidents of misconduct, but "for his repeated and alarming behaviors in failing to adequately and appropriately supervise the students under his care" dating back to 2015. Sch. Dist. Br. at 20. Thus, School District claims that the Arbitrator improperly modified the terms of the CBA when she limited the scope of the proceedings to the two incidents

14

referenced in the Statement of Charges, effectively creating a heightened pleading standard that is not required by the School Code. We disagree.

Section 1127 of the School Code provides: "Before any professional employe having attained a status of permanent tenure is dismissed by the board of school directors, such board of school directors *shall furnish such professional employe with a detailed written statement of the charges upon which his or her proposed dismissal is based* and shall conduct a hearing." 24 P.S. § 11-1127 (emphasis added). Section 1127 also mandates that the school district send "[a] written notice signed by the president and attested by the secretary of the board of school directors . . . to the professional employe setting forth the time and place when and where such professional employe will be given an opportunity to be heard either in person or by counsel, or both, before the board of school directors *and setting forth a detailed statement of the charges*." *Id.* (emphasis added).

In this case, the Statement of Charges specifically identified, and described in copious detail, only the May 22, 2018 and May 24, 2018 incidents. *See* R.R. at 101-03. The *Loudermill* Notice also referenced only the May 22, 2018 and May 24, 2018 incidents. *See* R.R. at 91-92. School District did not identify or describe any other incidents of misconduct in either the Statement or Charges or the *Loudermill* Notice issued to Mr. Seneca.[6] Consequently, those were the only two incidents that the Union was prepared to litigate at the hearings. *See Bethel Park Sch. Dist. v. Bethel Park Fed'n of Teachers, Local 1607*, 55 A.3d 154, 159 (Pa. Cmwlth. 2012)

---

[6] The Statement of Charges generically referenced the January 2018 incident involving a student who was injured during gym class, but only in the context of School District's allegation that Mr. Seneca failed to complete his POI. *See* R.R. at 101. The Arbitrator ultimately determined that this allegation was unfounded, because Mr. Seneca completed the requirements of his POI as of May 21, 2018 and was waiting for the final summary meeting to be rescheduled. Arbitrator Decision, 4/1/19, at 18.

15

(recognizing that, for purposes of due process, a "'public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story'") (citation omitted); *Dunn v. Dep't of Transp., Bureau of Driver Licensing*, 819 A.2d 189, 192 (Pa. Cmwlth. 2003) (stating that procedural due process requires that an individual be given adequate notice of the charges against him and an opportunity to be heard). Therefore, we conclude that the Arbitrator properly limited her inquiry to whether School District had just cause to discharge Mr. Seneca based on the two incidents of misconduct expressly identified in the Statement of Charges.

To the extent School District challenges the Arbitrator's evidentiary ruling with regard to the prior alleged incidents of misconduct, we note that the Arbitrator only precluded the introduction of video footage from a 2014 incident, because the "earlier events were not cited in the Statement of Charges and were from up to four years prior" to Mr. Seneca's discharge. Arbitrator Decision, 4/1/19, at 14. The Arbitrator did, however, permit School District to present evidence relating to prior incidents "as evidence of [Mr. Seneca's] knowledge of [School] District's performance expectations." *Id.* We conclude that the Arbitrator did not abuse her discretion with regard to these evidentiary rulings. *See AFSCME Dist. Council 88 v. Cty. of Lehigh*, 798 A.2d 804, 808 (Pa. Cmwlth. 2002) (noting that "the determination of the probative value and reliability of evidence are left to the sound discretion of the arbitrator").

Finally, School District argues that by reducing Mr. Seneca's discharge to a three-day suspension, the Arbitrator "usurp[ed] the authority of [School] District" to terminate Mr. Seneca's employment in accordance with the CBA and Section 1122(a) of the School Code. Sch. Dist. Br. at 31. We disagree.

16

This Court has recognized that "absent a clear limitation in the CBA, it is within an arbitrator's authority to modify the discipline imposed by a school district." *Sch. Dist. of Phila. v. Com. Ass'n of Sch. Adm'rs, Teamsters Local 502*, 160 A.3d 928, 934 (Pa. Cmwlth. 2017). "It is well-established that an arbitrator may fashion a remedy in a particular case that is not explicitly prescribed in the CBA so long as the remedy furthers the essence of the CBA." *Pa. State Sys.*, 193 A.3d at 495; *see also Rose Tree Media Secretaries & Educ. Support Pers. Ass'n v. Rose Tree Media Sch. Dist.*, 136 A.3d 1069, 1080 (Pa. Cmwlth. 2016) ("In accord[ance] with the CBA, it is solely within [the a]rbitrator's province to find just cause for discipline under the facts of the case. *This includes the authority to modify discipline.*") (emphasis added); *Blue Mountain Sch. Dist. v. Soister*, 758 A.2d 742, 745 (Pa. Cmwlth. 2000) (holding that where the CBA neither explicitly reserved to the school district the sole discretion to determine the penalty imposed, nor precluded an arbitrator from making that decision, the arbitrator could set aside the employee's termination and impose a lesser penalty).

Here, School District has cited no provision in the CBA, nor have we found any such provision, that gives School District the sole authority to determine the penalty for a professional employee's misconduct. In fact, the parties stipulated at the outset of the arbitration proceedings that the Arbitrator would determine the proper penalty. *See* Arbitrator Decision, 4/1/19, at 1 (stating that "[t]he issue to be determined is whether [Mr. Seneca] was discharged for just cause" and "[i]f not, what shall the remedy be[]"). Consequently, after reviewing the evidence of record, the Arbitrator fashioned what she deemed to be the appropriate level of discipline based on the gravity of Mr. Seneca's misconduct, as she was empowered to do.

17

For these reasons, we conclude that the Arbitrator's Award has its foundation in, and logically flows from, the CBA and, thus, satisfies the essence test.

## 2. Public Policy Exception

Next, School District argues that, even if the essence test is satisfied, the Arbitrator's Award violates established public policy favoring the safety of children in schools.[7] Specifically, School District contends that there is a well-defined, dominant public policy requiring professional educators to ensure the safety of the students under their supervision. In this case, the Arbitrator found that Mr. Seneca neglected this duty, yet she erroneously reinstated Mr. Seneca and allowed him to return to the classroom. According to School District, a teacher who "is unaware of the whereabouts of one of his young children for more than twenty minutes," Arbitrator Decision, 4/1/19, at 17, does not maintain a safe educational environment for his students. Thus, School District contends that the Trial Court erroneously concluded that the Award does not violate public policy. We disagree.

Once the essence test is satisfied, a reviewing court may then consider whether the arbitration award violates a well-defined, dominant public policy of the Commonwealth. *Pa. State Sys.*, 193 A.3d at 498. In deciding whether to apply the public policy exception, the court must consider: (1) the nature of the employee's conduct leading to discipline; (2) whether the employee's conduct implicates a well-defined, dominant public policy; and (3) whether the arbitration award poses an unacceptable risk that it will undermine the implicated policy. *Slippery Rock Univ. of Pa., Pa. State Sys. of Higher Educ. v. Ass'n of Pa. State Coll. & Univ. Faculty*, 71 A.3d 353, 363 (Pa. Cmwlth. 2013). The public policy exception is narrow and

---

[7] Whether an arbitration award violates public policy is a question of law for which our standard of review is *de novo* and our scope of review is plenary. *Phila. Housing Auth. v. Am. Fed'n of State, Cty., & Mun. Emps., Dist. Council 33, Local 934*, 52 A.3d 1117, 1121 (Pa. 2012).

"prohibit[s] a court from enforcing an arbitrat[ion] award that contravenes public policy." *Shamokin Area Sch. Dist. v. Am. Fed'n of State, Cty., & Mun. Emps. Dist. Council 86*, 20 A.3d 579, 582 (Pa. Cmwlth. 2011). However, "we may not vacate an arbitrator's award under the public policy exception simply because the conduct at issue is unacceptable in a public employment setting." *Sch. Dist. of Phila.*, 160 A.3d at 939.

Here, the Arbitrator found that Mr. Seneca's misconduct was limited to his negligence in failing to know the whereabouts of a third grade student for 20 minutes on May 24, 2018. Arbitrator Decision, 4/1/19, at 17-18. Significantly, the Arbitrator determined that the remaining allegations against Mr. Seneca were unsupported by the evidence and not sufficient grounds for just cause. *Id.* at 16-17. Because we are constrained by the Arbitrator's factual findings on appeal, we must limit our inquiry to whether the Arbitrator's decision to reinstate Mr. Seneca – in light of her finding that he was negligent in supervising a third grade student – contravenes a well-defined, dominant public policy. *See Sch. Dist. of Phila.*, 160 A.3d at 939; *Blairsville-Saltsburg Sch. Dist. v. Blairsville-Saltsburg Educ. Ass'n*, 102 A.3d 1049, 1052 (Pa. Cmwlth. 2014) (stating that, when applying the public policy exception, "[t]he focus must be on whether *the arbitration award*, if enforced, would contravene public policy, *not* whether the employee's misconduct violated public policy") (emphasis added).

School District argues that by reinstating Mr. Seneca to his teaching position, the Arbitrator violated an established public policy of ensuring children's safety in schools. However, the Arbitrator determined that the May 24, 2018 incident resulted from a mere misunderstanding between the student and Mr. Seneca, finding "no indication that [Mr. Seneca] directed the student to go outside, but rather, believed

her to understand that the gym equipment would be located inside the building." Arbitration Decision, 4/1/19, at 16. She also found "no evidence to support the charge[s] of immorality, unethical behavior, abuse of authority, or even willful neglect of duties." *Id.* at 17. Despite these findings, the Arbitrator nonetheless concluded that Mr. Seneca's inattentiveness in failing to notice that the third grade student was absent from his class for 20 minutes constituted negligence that required some level of discipline.

In deciding to reinstate Mr. Seneca, the Arbitrator considered the gravity of the offense in conjunction with Mr. Seneca's lengthy teaching career, his history of satisfactory performance reviews through 2017, and the fact that, at the time of the offense, he was one day shy of successfully completing his POI. Moreover, during the five months that he worked on completing the POI, Mr. Seneca "demonstrated a willingness to cooperate with School District and learn better teaching techniques," as documented in several School District e-mails. *Id.* at 18. In fact, the evidence showed that "after both [the May 22, 2018 and May 24, 2018] incidents, [Mr. Seneca] was asked to supervise up to 75 students during a [p]arent [v]olunteer [b]reakfast on May 25, 2018." *Id.* at 9. Thus, the Arbitrator concluded that, although it is evident that Mr. Seneca still "needs to do better" with supervising his students, "his discharge was unduly harsh and not consistent with the gravity of his conduct." *Id.* at 18; *see N. Penn Sch. Dist. v. N. Penn Educ. Ass'n*, 58 A.3d 848, 858 (Pa. Cmwlth. 2012) ("[An arbitration award] under the public policy analysis [must draw] the necessary balance between the public employer's duty to protect the health, safety and welfare of the public, and the fair treatment of public employees.").

We conclude that, under these circumstances, the Arbitrator's Award reinstating Mr. Seneca to his teaching position does not violate a well-defined, dominant public policy. *Cf. Sch. Dist. of Phila.*, 160 A.3d at 939 ("*This Court has not previously recognized a public policy exception that would prevent an administrator from being reinstated based on mere negligence*, and we decline to recognize one based on the facts of this case.") (emphasis added).

## Conclusion

In sum, we conclude that the Arbitrator's Award was within the terms of the CBA and was rationally derived from the CBA. Based on the credible evidence of record, the Arbitrator correctly determined that most of the charges against Mr. Seneca were unfounded and that School District did not have just cause to dismiss him for his act of negligent supervision on May 24, 2018. Furthermore, we conclude that School District failed to establish that the Arbitrator's Award, reducing Mr. Seneca's discipline to a three-day suspension and reinstating him to his teaching position, violated a well-defined, dominant public policy. Accordingly, we affirm the Trial Court's Order.

_____
ELLEN CEISLER, Judge

21

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

North Allegheny School District, :
              Appellant :
               :
      v. : No. 1379 C.D. 2019
               :
North Allegheny Federation of :
Teachers, Local 2097, American :
Federation of Teachers, AFL-CIO :
(Federation) :

# **O R D E R**

AND NOW, this 9th day of November, 2020, the Order of the Court of Common Pleas of Allegheny County, filed on August 29, 2019, is hereby AFFIRMED.

 

_____
ELLEN CEISLER, Judge